Lon WEIGEL *v.* FARMERS INSURANCE COMPANY, Inc.

03–643 158 S.W.3d 147

Supreme Court of Arkansas
Opinion delivered April 8, 2004

*Odom & Elliott*, by: *Conrad Odom*; and *The Niblock Law Firm*, by: *Jason M. Hatfield*, for appellant.

*Benson, Robinson & Wood*, by: *Jon P. Robinson*, for appellee.

DONALD L. CORBIN, Justice. Appellant Lon Weigel has filed an interlocutory appeal from the order of the Benton County Circuit Court disqualifying his attorney, Jason Hatfield, and the Niblock Law Firm from representing him at trial in his suit against Appellee Farmers Insurance Company, Inc. For reversal, Appellant argues that the trial court erred in finding that Hatfield was a necessary witness under Model Rule of Professional Conduct 3.7. Specifically, Appellant argues that (1) Rule 3.7 only applies to attorneys who voluntarily give testimony on behalf of their clients; (2) any matter to which Hatfield could testify is uncontested; and (3) Hatfield's disqualification would work a substantial hardship on Appellant. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(b)(5), as it raises significant issues needing clarification or development of the law. We affirm the order of disqualification.

This case stems from an accident that occurred on May 16, 1996, involving Appellant and Donna Knutson. At the time of the

accident, Appellant's vehicle was insured by Farmers, while Knutson's vehicle was insured by Allstate Insurance Company. Over the next two years, Farmers paid approximately $6,000 in medical payments for Appellant. In May 1999, Appellant filed suit against Knutson for his injuries. He sought the full amount of Knutson's policy limits, which was reportedly $100,000. He was represented in that suit by Hatfield and the Niblock Law Firm. A jury trial was set for October 31 through November 2, 2000.

One month prior to trial, on September 29, 2000, Appellant notified Farmers of the possibility of an underinsured-motorist claim, stating that he had already incurred medical bills exceeding $64,000. Six days before the trial, Knutson's attorney asked Hatfield if Appellant would sign a full release of Knutson in exchange for a check for $100,000. Hatfield communicated the offer to Farmers' branch claims supervisor, Matt Bamber. Bamber advised Hatfield that if Knutson's insurer made a policy-limits offer, Hatfield should make a formal demand for underinsured-motorist benefits pursuant to Ark. Code Ann. § 23-89-209(c) (Repl. 1999). One day before trial, Hatfield again contacted Bamber and asked Farmers to agree to allow Appellant to sign a full release of Knutson in exchange for $100,000, purportedly the full policy limits. Bamber indicated that Farmers would not permit Appellant to sign a release at that time.

Following Farmers' refusal to release the tortfeasor, Appellant proceeded to try the case against Knutson. The jury returned a verdict in favor of Appellant, but for only $5,000. Thereafter, in May 2001, Appellant filed suit against Farmers, alleging breach of contract, breach of fiduciary duty, bad faith, and deceptive trade practices. The crux of Appellant's suit was that Farmers' refusal to allow him to sign a full release of Knutson "forced" him to go to trial, where he received $95,000 less than the offer made by Knutson.

In response, Farmers moved to depose Hatfield as a material witness to its defense. Specifically, Farmers alleged that Hatfield's testimony was necessary on the following issues: (1) whether he complied with section 23-89-209(c); (2) whether he was familiar with that statute; (3) whether he had complied with that statute before; and (4) whether he knew the rules of civil procedure that would have allowed him to nonsuit the case or seek a continuance. This last issue was relevant to Farmers' defense that it was Hatfield's actions or inactions, not Farmers' bad faith, that "forced" Appellant to try the case against Knutson. Farmers subsequently

moved to disqualify Hatfield from representing Appellant at trial pursuant to Rule 3.7 of the Model Rules of Professional Conduct, which prohibits an attorney from being both an advocate and a necessary witness.

Farmers' motions were discussed during two hearings. At the December 19, 2001, hearing, the trial judge indicated that the motions might have merit, stating: "But as I read the Complaint and these, uh, these motions, I had the very distinct impression that [Mr. Hatfield] may very well wind up being a witness in the case through some of these verbal things, compliance things." Before ruling on the motions, however, the trial court instructed Farmers to file a written motion specifically setting out how Hatfield's testimony was necessary. The trial judge then acknowledged the magnitude of Farmers' motions, indicating that while he was reluctant to deprive Appellant of his chosen attorney, he was likewise reluctant to deprive Farmers of an affirmative defense.

As instructed, Farmers filed a written motion to disqualify Hatfield, setting out the specific reasons why Hatfield's testimony was necessary. Thereafter, a hearing was held on February 6, 2003, during which the trial court granted the motion. The trial court explained:

> I have, uh, I have determined, Mr. Hatfield, that the motion must be granted. I think that as I read this case you are — your role in the discussions and other things attempting — the attempts to work the case out, ultimately, uh, the things that took place during the course of the trial . . . all are pivotal, could be, to the issues, in determining the issues that are going to be addressed in this case. And this isn't a decision I am making light[ly] as obviously, I have been very reluctant to do this, but I am gonna do that.

A written order of disqualification was entered on March 5, 2003, and this appeal followed.

 We note at the outset that disqualification of an attorney is an absolutely necessary measure to protect and preserve the integrity of the attorney-client relationship; yet it is a drastic measure to be imposed only where clearly required by the circumstances. *Craig v. Carrigo*, 340 Ark. 624, 12 S.W.3d 229 (2000); *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990). This court reviews a trial court's decision to disqualify an attorney under an abuse-of-discretion standard. *Wilburn v. State*, 346 Ark.

137, 56 S.W.3d 365 (2001); *Craig*, 340 Ark. 624, 12 S.W.3d 229. An abuse of discretion may be manifested by an erroneous interpretation of the law. *Id.* The Model Rules of Professional Conduct are applicable in disqualification proceedings. *Id.* However, a violation of the Model Rules does not automatically compel disqualification; rather, such matters involve the exercise of judicial discretion. *Norman v. Norman*, 333 Ark. 644, 970 S.W.2d 270 (1998). With this standard in mind, we turn to the issues raised on appeal.

## I. Application of Rule 3.7

For his first point, Appellant argues that under Rule 3.7 of the Model Rules of Professional Conduct, an attorney should only be disqualified when he voluntarily acts as advocate and witness, not when opposing counsel forces him to be a witness. For his second point, Appellant argues that even if Rule 3.7 is applicable, Hatfield is not a necessary witness, because his testimony is either uncontested or cumulative of other witnesses' testimony. We discuss these points together, as they are interrelated.

This court adopted the Model Rules of Professional Conduct, including Rule 3.7, in a *per curiam* opinion delivered on December 16, 1985. *See In the Matter of Arkansas Bar Ass'n: Petition for the Adoption of Model Rules of Professional Conduct*, 287 Ark. Appx. 495, 702 S.W.2d 326 (1985). The Model Rules became effective on January 1, 1986, and they replaced the Code of Professional Responsibility, which was adopted by *per curiam* order on June 21, 1976. *See id.* Rule 3.7 provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

> (1) the testimony relates to an uncontested issue;

> (2) the testimony relates to the nature and value of legal services rendered in the case; or

> (3) disqualification of the lawyer would work substantial hardship on the client.

Since its effective date, this court has had only four occasions to interpret Rule 3.7 in the context of an attorney's testimony being sought by the opposing party. In two of those cases, this

court did not specifically discuss the applicability of the rule; rather, the issue was disposed of by holding that there had been no showing that the attorney's testimony was necessary. *See Utley .v. City of Dover,* 352 Ark. 212, 101 S.W.3d 191 (2003) (holding that attorney's testimony was not relevant to any issues contained in the appellant's pleadings and that the appellant had failed to demonstrate that the attorney's testimony could not be gained from any other witness or source); *City of Dover v. City of Russellville,* 346 Ark. 279, 57 S.W.3d 171 (2001) (holding that attorney's testimony would only be cumulative to evidence offered by some nineteen other persons). The remaining two cases, *Purtle v. McAdams,* 317 Ark. 499, 879 S.W.2d 401 (1994), and *Chelette v. State,* 308 Ark. 364, 824 S.W.2d 389 (1992), discussed the rule's application to cases where the opposing party seeks to offer the attorney's testimony. Those cases, however, reached different conclusions.

In *Chelette,* the appellant argued that the trial court erred in denying his motion to have the prosecutor disqualified because he had been called as a witness for the defense. This court ultimately rejected the appellant's argument on the ground that the prosecutor's testimony was uncontested and cumulative and thus permissible under the exception set out in paragraph (1) of Rule 3.7. However, in so doing, this court acknowledged that Rule 3.7 would apply to a situation where the prosecutor testified for either the state or the defense. This court explained: "We have held that when a prosecutor undertakes an active role in the investigation of a crime so that he potentially becomes a material witness *either for the State or the defense,* he no longer may serve as the advocate for the State." *Id.* at 369, 824 S.W.2d at 391-92 (emphasis added) (citing *Duncan v. State,* 291 Ark. 521, 726 S.W.2d 653 (1987)).

Two years later, in *Purtle,* 317 Ark. 499, 879 S.W.2d 401, this court reached the opposite conclusion. There, the trial court disqualified counsel on the grounds that (1) his prior representation of two of the parties created a conflict of interests, and (2) one of the opposing parties intended to call counsel as a witness at trial. On appeal, this court affirmed the attorney's disqualification on the ground that his previous representation created a conflict of interests; however, this court rejected the notion that the attorney should be disqualified because the opposing party wished to call him as a witness. In so holding, this court interpreted Rule 3.7 as only pertaining to "situations where the lawyer is to be a witness

on behalf of his or her client — not when called as a witness by the opposing party." *Id.* at 503, 879 S.W.2d at 403. This court explained:

> The first paragraph of the comment to this rule makes that clear: "Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client." Moreover, the cases cited by B.J. McAdams in his brief are concerned with situations where the attorney seeks to testify on behalf of his or her own client. *See, e.g., McIntosh v. Southwestern Truck Sales,* 304 Ark. 224, 800 S.W.2d 431 (1990); *Calton Properties, Inc. v. Ken's Discount Building Materials, Inc.,* 282 Ark. 521, 669 S.W.2d 469 (1984); *Bishop v. Linkway Stores, Inc.,* 280 Ark. 106, 655 S.W.2d 426 (1983) (supp'l op.).

> That is clearly not the situation here. Moreover, the obvious danger from allowing an adversary to call opposing counsel as a witness and disqualify that counsel as a result is the potential for subterfuge. It could easily be used as a ploy to cripple a party from effectively presenting a case. Finally, we discern no prejudice to John Purtle's clients at this stage from his being called as a witness by the McAdamses. Without discernable prejudice to his clients by his testimony, there is no basis for disqualification. *See* Rule 3.7 of the Model Rules of Professional Conduct (Code Comparison, DR5-102(B)); *see also Orsini v. Larry Moyer Trucking, Inc.,* 310 Ark. 179, 833 S.W.2d 366 (1992); *McCoy Farms, Inc. v. McKee,* 263 Ark. 20, 563 S.W.2d 409 (1978).

*Id.* at 503-04, 879 S.W.2d at 403-04.

Appellant argues that *Purtle* requires reversal in this case. Farmers, on the other hand, argues that, at best, the discussion of Rule 3.7 in *Purtle* was dicta, as it was not necessary to the result in that case. Farmers also contends that *Purtle* misstated the scope of Rule 3.7 by ignoring the plain language of the rule and by attributing to Rule 3.7 the characteristics of its predecessor, Code of Professional Responsibility DR 5-102(B).

We agree with Farmers that, on its face, Rule 3.7 does not limit its application to cases in which an attorney testifies on behalf of his or her client. Rather, it plainly states that an attorney shall not act as advocate at a trial in which he or she is likely to be a "necessary witness," unless the attorney's testimony relates to an uncontested issue or to the nature and value of legal services

rendered in the case or the attorney's disqualification would work a substantial hardship on the client. Although the rule does not define "necessary witness," it is difficult to see how the term can only mean a witness *for the client*.

■ Indeed, courts from other jurisdictions have concluded that Rule 3.7 is applicable to cases where the attorney will be called to testify for the opposing party, provided that the opposing party demonstrates three things: (1) that the attorney's testimony is material to the determination of the issues being litigated; (2) that the evidence is unobtainable elsewhere; and (3) that the testimony is or may be prejudicial to the testifying attorney's client. *See Klupt v. Krongard*, 126 Md. App. 179, 728 A.2d 727, *cert. denied*, 355 Md. 612, 735 A.2d 1107 (1999); *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 876 P.2d 184 (1994); *Smithson v. United States Fidelity & Guar. Co.*, 186 W. Va. 195, 411 S.E.2d 850 (1991); *Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 128 Ariz. 99, 624 P.2d 296 (1981). Courts have viewed this three-pronged test as being necessary to prevent Rule 3.7 from being used as a sword or a tactical measure to hinder the other party's case. *See Klupt*, 126 Md. App. 179, 728 A.2d 727; *Cottonwood*, 128 Ariz. 99, 624 P.2d 296. In this respect, the test "strikes a reasonable balance between the potential for abuse and those instances where the attorney's testimony may be truly necessary to the opposing party's case." *Smithson*, 186 W. Va. at 201, 411 S.W.2d at 856.

We conclude that the foregoing test is sound, and we hereby adopt it. The test is consistent with our previous holding in *Chelette*, 308 Ark. 364, 824 S.W.2d 389, that the rule applies regardless of which side seeks to present the attorney's testimony. The test is also consistent with our decision in *Purtle*, 317 Ark. 499, 879 S.W.2d 401, to the extent that the opposing party must demonstrate that the attorney's own client will or may be prejudiced by the attorney's testimony.

■ Additionally, the test takes into consideration many of the reasons for prohibiting an attorney from being both advocate and necessary witness: (1) an advocate who becomes a witness may be in the unseemly position of arguing his own credibility; (2) the roles of advocate and witness are inconsistent and should not be assumed by one individual; and (3) the attorney should not act as both trial counsel and a material witness because of the appearance

of impropriety. *See Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995) (citing *Ford v. State*, 4 Ark. App. 135, 628 S.W.2d 340 (1982)).

 Applying the test to the facts of this case, we affirm the trial court's order of disqualification. As to the first prong, whether Hatfield's testimony is material, Appellant's complaint contains allegations of breach of contract, breach of fiduciary duty, bad faith, and deceptive trade practices. The crux of the suit is the allegation that Farmers refused to permit Appellant to sign a release of the tortfeasor in exchange for a settlement with the tortfeasor's insurer, and that such refusal cost Appellant $95,000 plus the potential for underinsured-motorist benefits. Farmers maintains that Hatfield's testimony is necessary to refute the allegations in the complaint and to establish its affirmative defense of noncompliance with the underinsured-motorist statute, section 23-89-209(c).

Appellant does not dispute that Hatfield's testimony is material; rather, he disputes the second prong of the test, which is that the evidence must be unobtainable from other witnesses or sources. Particularly, Appellant contends that any evidence that Hatfield could supply, *i.e.*, what information he did or did not provide to Farmers; the fact that there was only an oral offer of the tortfeasor's policy limits; and the fact that he did not strictly comply with the requirements of section 23-89-209(c), could also be offered by Farmers' employees.

Farmers counters this argument by stating that Hatfield's testimony is the only way to prove its affirmative defense of noncompliance with section 23-89-209(c). Farmers also asserts that Hatfield's testimony is necessary to refute the allegation in the complaint that Farmers' refusal to permit Appellant to release the tortfeasor forced him to go to trial, where he ultimately received a verdict that was ninety-five percent less than the settlement offer. In this respect, Farmers asserts that Hatfield's testimony is crucial as to his awareness that he had the options of either continuing the trial or taking a nonsuit to allow Farmers more time to evaluate the claim. In essence, Farmers' defense is that Hatfield's negligence, not Farmers' bad faith, forced Appellant to decline the settlement offer and proceed to trial. We agree that Hatfield's testimony is both material and necessary in this case.

The complaint reflects no less than four paragraphs describing conversations that "Plaintiff Weigel's attorney" had with the tortfeasor's attorney and with Farmers' claims supervisor:

16. That on or about October 25, 2000, Donna Knutson's attorney, John Moore, asked Plaintiff Weigel's attorney, Jason Hatfield, if Plaintiff Weigel would sign a full release for Donna Knutson in exchange for a check for $100,000.00.

. . . .

18. That Plaintiff Weigel's attorney then contacted Defendant Farmers and discussed the oral offer with Branch Claims Supervisor, Matt Bamber. That Mr. Bamber indicated that the Knutsons had assets available and that Farmers would substitute the $100,000.00 if a formal offer was made pursuant to Ark. Code Ann. Sec. 23-89-209(c). . . .

19. That Plaintiff Weigel's attorney discussed the offer several times with Allstate's attorney, John Moore, and Mr. Moore made it clear that an offer of $100,000.00 was contingent on Plaintiff Weigel signing a full release of the Knutsons.

20. That Plaintiff Weigel's attorney called Matt Bamber at Farmers on October 30, 2000, and asked Farmers to agree to allow Plaintiff Weigel to sign a full release in exchange for the policy limits of $100,000. That Matt Bamber said that Farmers would refuse coverage under Plaintiff Weigel's underinsured motorist coverage if he signed the release, conversely Mr. Bamber said that Farmers would not substitute limits since any offer made was not in accordance with Ark. Code Ann. Sec. 23-89-209(c). That further, Mr. Bamber said that he owed a duty to his policyholders and that Plaintiff Weigel could not have his cake and eat it too.

■ These oral conversations, especially those between Hatfield and Bamber, are the centerpiece of Appellant's claims, as pled in the complaint, and Farmers should be permitted to question Hatfield in order to respond to the allegations in the complaint. We agree with Farmers that its defense will be hampered if Hatfield is allowed to cross-examine its employees about the substance of those conversations, but Farmers is not, in turn, permitted to question Hatfield about them. We also agree that Hatfield is the only witness who can testify as to whether he was aware of the provisions of section 23-89-209(c), whether he complied with them, and whether he considered taking a nonsuit or asking for a continuance to give Farmers additional time to investigate and evaluate the claim. One court has concluded that

an attorney's testimony about his strategy and what transpired during settlement negotiations was crucial to prove bad faith. *See Warrilow v. Norrell*, 791 S.W.2d 515 (Tex. Ct. App. 1989). It logically follows that such testimony may well be crucial to defend against a claim of bad faith.

Before we leave this issue, we must address the statement made during oral argument before this court, that Appellant may be willing to stipulate that Hatfield failed to provide Farmers with the items listed in section 23-89-209(c) and that Hatfield was aware that he could have advised Appellant to take a nonsuit or seek a continuance rather than force the jury trial. Appellant implies that such a stipulation renders Hatfield's testimony unnecessary. We do not agree. Regardless of whether Hatfield testifies in person or through a set of written stipulations, he is still a witness, and he will be in the unseemly position of arguing his own credibility, notably in opening and closing statements. Similarly, his credibility will be an issue in cross-examining Farmers' employees about what he told them or what information he supplied them.

Finally, as to the third prong of the test, we conclude that Hatfield's testimony will or may be prejudicial to his client. In his deposition, Hatfield conceded that he did not give Farmers the information listed in section 23-89-209(c), such as medical records, medical bills, or even a copy of the tortfeasor's insurance policy, prior to his attempt (one week before trial) to get Farmers to permit his client to sign a release of the tortfeasor. He also agreed with Farmers that such information was necessary for Farmers to properly evaluate Appellant's claim before it made a decision to allow him to release the tortfeasor. He further conceded that he could have taken a nonsuit or sought a continuance, rather than forcing the case to trial. It is difficult to see how this testimony is not prejudicial to Appellant's case.

In sum, we hold that Rule 3.7 prohibits an attorney from being an advocate where he or she is likely to be a necessary witness. The rule's prohibition is not limited to cases in which the attorney will give testimony on behalf of his client. The plain language of the rule only requires a showing that the attorney is likely to be a "necessary witness." We thus overrule *Purtle*, 317 Ark. 499, 879 S.W.2d 401, to the extent that it purported to create a bright-line rule limiting application of Rule 3.7 to those cases where the attorney will testify on behalf of his or her client.

Notwithstanding, we are mindful of the legitimate concern raised in *Purtle* that Rule 3.7 might be used as a ploy by an opposing party to delay or otherwise hinder the other party's case. However, we are also mindful that in some instances, like the present case, the attorney's testimony may be truly necessary to the opposing party's case. By adopting the three-pronged test set out above, the potential for illegitimate use of Rule 3.7 is minimized considerably. Because Farmers has demonstrated each prong of the test, we conclude that the trial court did not abuse its discretion in disqualifying Hatfield as Appellant's counsel under Rule 3.7.

## II. Substantial Hardship on Appellant

For his final point, Appellant argues that it would work a substantial hardship on him if Hatfield and the Niblock Law Firm are disqualified. He thus contends that the exception in Rule 3.7(3) is applicable. Particularly, Appellant argues that he has years of experience with Hatfield and his firm, and that the firm has "extensive knowledge of appellant's injuries, doctors, disability, family, person, etc." He then asserts that Hatfield's, and thus his firm's, disqualification "forces appellant to hire another attorney who would have hours of documents, depositions, manuals, and records to review."

Farmers counters that if disqualification in Appellant's case is a "substantial hardship," then every case would fall into that category and the exception would swallow up the rule. Farmers also argues that Hatfield is partly to blame for this hardship, as he should have known from the moment he drew up the complaint that he would likely be a necessary witness in the matter. Farmers points to the trial judge's observation that as he read the complaint and the motions, he was immediately struck with the thought that Hatfield may be a necessary witness in the case.

In deciding to disqualify Hatfield and his firm, the trial court considered the hardship that may befall Appellant. Indeed, the trial court assumed, for the sake of argument, that Appellant would just as soon lose his right hand as to lose Hatfield as his attorney. Notwithstanding, the trial court concluded that any hardship to Appellant was outweighed by Farmers' right to present a defense to the allegations. The trial court was correct in applying such a balancing test, as the official Comment to Rule 3.7 states:

> [P]aragraph (3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the

opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.

We conclude that the trial court did not abuse its discretion in concluding that the hardship to Appellant was not substantial, in light of Farmers' need of Hatfield's testimony to defend the allegations and the fact that Hatfield could have reasonably foreseen that he would likely be a necessary witness.

Affirmed.