SLIP OPINION

Cite as 2017 Ark. 152

# SUPREME COURT OF ARKANSAS
No. CV-16-697

| | |
|---|---|
| | **Opinion Delivered:** April 27, 2017 |
| HELENA COUNTRY CLUB<br>APPELLANT | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. 54CV-15-226] |
| V. | |
| BILLY RAY BROCATO D/B/A SPLASH POOL AND SPA<br>APPELLEE | HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE |
| | REMANDED TO SETTLE THE RECORD. |

**COURTNEY HUDSON GOODSON, Associate Justice**

This is an interlocutory appeal from the Phillips County Circuit Court's disqualification of Charles E. Halpert, Jr., as counsel for appellant, the Helena Country Club ("the Club"). For reversal, the Club argues that (1) the circuit court erred in its conclusion that evidence of an alleged statement made during settlement negotiations was admissible to allow appellee, Billy Ray Brocato d/b/a Splash Pool and Spa ("Brocato"), to call the Club's attorney as a witness; and (2) the circuit court erred in disqualifying the Club's attorney based solely on opposing counsel's statement that the attorney would be called as a witness. Our jurisdiction is pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(8) (2016). We are unable to address the merits of this appeal on the record before us, and we therefore remand to settle the record.

On September 22, 2015, Brocato filed a complaint against the Club, alleging claims of breach of contract and a violation of the Arkansas Deceptive Trade Practices Act

("ADTPA"). The facts as alleged in the complaint indicated that Brocato had been providing pool maintenance and cleaning services to the Club for the previous five years pursuant to the parties' oral agreement. Brocato stated that the parties had a course of dealing wherein he would perform the services he deemed appropriate and then bill the Club for those services. Brocato indicated that he was contacted by the Club in April 2015 and that he was instructed to prepare the pool for the upcoming summer season. He claimed that he conducted maintenance, repairs, and cleaning on the pool in April and May 2015, that he submitted invoices to the Club for the work, and that the Club had since refused to remit payment to him. Brocato alleged that he had suffered damages in the amount of $11,505.48, plus interest and costs, and he also requested $25,000 in punitive damages.

The Club, through its attorney, Halpert, filed an answer to the complaint and a counterclaim. In its counterclaim, the Club alleged that Brocato had been notified that all work must be approved in advance and that he had failed to ask for approval for certain extra work. The Club denied that this extra work had been performed, and even if it had been, the Club indicated that it was not authorized. In addition, the Club claimed that Brocato had knowingly placed excessive orders for pool chemicals and that he had allegedly installed a new pump but had failed to produce an invoice for it. The Club asserted that these actions constituted both fraud and a violation of the ADTPA and requested damages in excess of $11,000, as well as punitive damages.

On June 16, 2016, the Club filed a motion to exclude evidence, claiming that Brocato had recently notified Halpert that he intended to call him as a witness at trial, which was scheduled for July 11, 2016. According to the Club's motion, Brocato intended to

introduce a statement allegedly made by Halpert during a telephone conversation during which the possibility of settlement was discussed with Brocato and his counsel, and Halpert had responded, "We aren't paying him a fucking thing." The Club claimed that both Halpert and Brocato's counsel denied this event. The Club further argued that Arkansas Rule of Evidence 408 prevented the introduction of this evidence and that admission of this alleged statement at trial might require the disqualification of Halpert.

Brocato filed a response to the motion and a brief in support in which he asserted that the statement made by Halpert was not made during settlement negotiations but was instead made in response to a demand by Brocato's counsel for payment. Even if it was found to have been made during settlement negotiations, Brocato argued that the statement was not inadmissible under Rule 408 because it would be used to prove the Club's intent and bias in relation to the ADTPA claim, not to prove the liability for, invalidity of, or amount of the claim. In addition, Brocato contended that Halpert would "undoubtedly" be called to testify as a witness at trial because he was on the board of directors of the Club when the decision was made to not pay Brocato. Brocato thus argued that this evidence was relevant to Halpert's credibility and that the Club's motion should be denied.

On July 6, 2016, the circuit court apparently held a telephone hearing on the Club's motion to exclude evidence. However, both parties agree that this hearing was not transcribed, and there is no record of what occurred during the hearing. The circuit court then entered an order on July 8, 2016, disqualifying Halpert from representing the Club. The court found that "the potential for Mr. Halpert being called as a witness is imminent and it could be construed that the purpose of the evidence and/or testimony presented by

3

Mr. Halpert would be for some other reason than the introduction of settlement negotiations." The court thus concluded that "[i]t appears that Mr. Halpert has a conflict and as such he is disqualified from representing Defendant in this matter." The Club filed a timely notice of interlocutory appeal from the order of disqualification.

On appeal, the Club argues that the circuit court erred in concluding that evidence of an alleged statement made during settlement negotiations was admissible to allow Brocato to call Halpert as a witness at trial. The Club further contends that the circuit court erred by disqualifying Halpert based solely on opposing counsel's statement that he would be called as a witness.

Arkansas Rule of Evidence 408 (2016) states as follows:

Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Also, according to Model Rule of Professional Conduct 3.7 (2016),

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

In *Weigel v. Farmers Insurance Co.*, 356 Ark. 617, 621–22, 158 S.W.3d 147, 150–51 (2004), we discussed the principles applicable to a circuit court's disqualification of counsel:

> We note at the outset that disqualification of an attorney is an absolutely necessary measure to protect and preserve the integrity of the attorney-client relationship; yet it is a drastic measure to be imposed only where clearly required by the circumstances. *Craig v. Carrigo*, 340 Ark. 624, 12 S.W.3d 229 (2000); *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990). This court reviews a trial court's decision to disqualify an attorney under an abuse-of-discretion standard. *Wilburn v. State*, 346 Ark. 137, 56 S.W.3d 365 (2001); *Craig*, 340 Ark. 624, 12 S.W.3d 229. An abuse of discretion may be manifested by an erroneous interpretation of the law. *Id.* The Model Rules of Professional Conduct are applicable in disqualification proceedings. *Id.* However, a violation of the Model Rules does not automatically compel disqualification; rather, such matters involve the exercise of judicial discretion. *Norman v. Norman*, 333 Ark. 644, 970 S.W.2d 270 (1998).

We stated that Rule 3.7 applies to situations in which the opposing party seeks to call counsel as a witness, and we adopted a test used by other jurisdictions in analyzing whether disqualification is proper under those circumstances. *Id.* at 625, 158 S.W.3d at 153. We held that the opposing party must demonstrate three things: (1) that the attorney's testimony is material to the determination of the issues being litigated; (2) that the evidence is unobtainable elsewhere; and (3) that the testimony is or may be prejudicial to the testifying attorney's client. *Id.*

We stated that this test is necessary to prevent Rule 3.7 from being used as a sword or a tactical measure to hinder the other party's case and that it strikes a reasonable balance between the potential for abuse and those instances in which the attorney's testimony may be truly necessary to the opposing party's case. *Id.* We further held that this test takes into consideration many of the reasons for prohibiting an attorney from being both advocate and necessary witness: (1) an advocate who becomes a witness may be in the unseemly position of arguing his own credibility; (2) the roles of advocate and witness are inconsistent and should not be assumed by one individual; and (3) the attorney should not act as both trial



counsel and a material witness because of the appearance of impropriety. *Id.*, 158 S.W.3d at 625−26.

Citing the foregoing factors, the Club argues that the circuit court in this case "summarily" concluded that the potential for its counsel to be called as a witness was imminent and that there was a conflict of interest requiring disqualification. The Club contends that the evidence sought by Brocato was invented solely for the purpose of disqualifying its counsel and that the court heard no proof on the issue and failed to apply the test sought out in *Weigel*.

Unfortunately, we are unable to address the merits of the Club's arguments at this time because we are unable to determine from the record before us the arguments and evidence on which the circuit court based its decision to disqualify Halpert. While both parties agree that a telephone hearing was held on the Club's motion to exclude evidence, and the circuit court's order also refers to a hearing having been held, there is no transcript of this hearing in the record.

Pursuant to Arkansas Supreme Court Administrative Order No. 4 (2016), "[u]nless waived on the record by the parties, it shall be the duty of any circuit court to require that a verbatim record be made of all proceedings, including any communications between the court and one or more members of the jury, pertaining to any contested matter before the court or the jury." In *Robinson v. State*, 353 Ark. 372, 108 S.W.3d 622 (2003), we held that it was error for the circuit court not to make a verbatim record of an in-chambers conference. We stated that it puts this court at a considerable disadvantage in reviewing points on appeal pertaining to unrecorded hearings when a verbatim record is not before

us, and we put the bench and bar on notice that "henceforth, this court will strictly construe and apply Administrative Order No. 4." *Id.* at 378, 108 S.W.3d at 625.

Citing *Robinson*, we remanded to the trial court to settle the record in *Williams v. State*, 362 Ark. 416, 208 S.W.3d 761 (2005), where the court conducted an off-the-record, in-chambers review of a videotaped statement that the defendant had sought to suppress at trial. *See also George v. State*, 356 Ark. 345, 151 S.W.3d 770 (2004) (remanding where suppression hearing was not transcribed on the record). We have further held that compliance with Administrative Order No. 4 is mandatory, not discretionary. *Thompson v. Guthrie*, 373 Ark. 443, 284 S.W.3d 455 (2008).

Here, the issue of whether Brocato would be allowed to call Halpert as a witness at trial, thereby causing the circuit court to enter an order disqualifying Halpert from representing the Club, was clearly contested, as evidenced by the Club's motion and Brocato's response. However, because the circuit court failed to comply with its duty to record the hearing on the motion, we are unable to determine whether the court abused its discretion in disqualifying Halpert under the facts in this case. We therefore remand this case to settle the record in this matter. We note that Arkansas Rule of Appellate Procedure–Civil 6(b) provides a method by which the parties may settle the record when no transcript is available.

We order Brocato to file a certified, supplemental record containing the necessary material within thirty days of this court's opinion. Brocato shall then have fifteen days from the date the supplemental record is lodged to file a substituted abstract, addendum, and brief containing the relevant portions of the supplemental record. *See* Ark. Sup. Ct. R. 4–2(b)(3)

(2016). After service of the substituted brief, the Club will have an opportunity to file a responsive brief in the time prescribed by the Supreme Court Clerk, or it may rely on the brief it has previously filed in this appeal.

Remanded to settle the record; appellant ordered to file supplemental record within thirty days; substituted brief due within fifteen days from when supplemental record is filed; appellee may then file responsive brief.

HART, WOOD, and WOMACK, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** The majority's decision to remand this case to settle the record is troubling. There is no record to settle. Appellee did not file a written motion to disqualify Attorney Halbert. Likewise, it is not disputed that appellee did not even make an oral motion to disqualify Attorney Halbert. In fact, in his brief, appellee confirms this fact and even goes so far as to distance himself from the circuit court's ruling. He states:

> Appellee takes no position on the disqualification of Appellant's attorney. Appellee never asked for the trial court to disqualify Appellant's counsel. Furthermore, Appellee never made an argument for or against the disqualification of Appellant's counsel in the telephone hearing.

There was no verbatim record of the so-called "telephone hearing." Neither party claims that any evidence was taken.

However, what the majority perceives as the lack of a record in this case does not prevent this court from making a decision; it facilitates it. The circuit court decided to disqualify Attorney Halbert sua sponte. Although we review a circuit court's decision to disqualify an attorney under an abuse-of-discretion standard, *Valley v. Phillips County Election*

*Commission*, 357 Ark. 494, 183 S.W.3d 557 (2004), which is extremely deferential to the circuit court's decision, this case shows a clear abuse of that discretion.

Under Arkansas law, disqualification of a lawyer is not favored because "[a] litigant, of course, is entitled to counsel of its own choosing." *Floyd v. State*, 2016 Ark. 264, 495 S.W.3d 82 (quoting *Saline Mem'l Hosp. v. Berry*, 321 Ark. 588, 906 S.W.2d 297 (1995). We have stated that disqualification is a drastic measure to be imposed only where clearly required by the circumstances. *Id*. (citing *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990)). In *Burnette*, this court stated, "We must never forget that a disqualification, though aimed at protecting the soundness of the attorney-client relationship, also interferes with, or perhaps destroys, a voluntary relationship by depriving a litigant of counsel of his own choosing—oftentimes affecting associations of long standing." 303 Ark. at 155, 794 S.W.2d at 148.

In *Weigel v. Farmers Insurance Co., Inc.*, this court adopted a three-part test that requires the party seeking disqualification of an attorney-witness to prove (1) that the attorneys testimony is material to the determination of the issues being litigated; (2) that the evidence is unobtainable elsewhere; and (3) that the testimony is or may be prejudicial to the testifying attorney's client. 356 Ark. 617, 625, 158 S.W.3d 147, 153 (2004). Obviously, appellee did not prove any of the elements in the *Weigel* test because appellee did not even ask the circuit court to disqualify Attorney Halbert.

As noted previously, the circuit court's decision is reviewed for an abuse of discretion. *Valley*, *supra*. An abuse of discretion means a discretion improvidently exercised, which is defined as thoughtlessly and without due consideration. *Id*. Acting without so much as an

oral motion to disqualify Attorney Halbert and not considering the *Weigel* test is exercising discretion thoughtlessly and without due consideration.

In making its decision to settle the record in this case, the majority has failed to appreciate that an appeal is a costly endeavor for both parties. Furthermore, even though this court hears appeals expeditiously, interlocutory appeals delay litigation. Creating an unnecessary obstacle to appellant's receiving the relief to which it is obviously entitled thwarts justice. I therefore respectfully dissent.

WOOD and WOMACK, JJ., join.

*Halbert Law Office*, by: *Charles E. Halbert*, for appellant.

*Knapp Lewis Law Firm*, by: *Donald E. Knapp, Jr.*, and *Michael C. Lewis*, for appellee.