Cite as 2024 Ark. 41

# SUPREME COURT OF ARKANSAS
No. CV-23-59

| | |
|---|---|
| | **Opinion Delivered:** April 4, 2024 |
| KENNETH D. STUART;[1] JAMES GREENHAW; ELIZABETH JESSUP; AMBER WOOLDRIDGE; KEVIN LIGHTBURN; KALVIN HENDERSON; CBC VISION, LLC; TIMOTHY TYLER GARDNER; JAMSHID MIRTALIPOV; AND GARRETT TAYLOR <br> APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60CV-17-4532] <br><br> HONORABLE PATRICIA JAMES, JUDGE |
| V. | |
| LARRY WALTHER, IN HIS OFFICIAL CAPACITY AS SECRETARY OF ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION <br> APPELLEE | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellants Kenneth D. Stuart,[1] James Greenhaw, Elizabeth Jessup, Amber Wooldridge, Kevin Lightburn, Kalvin Henderson, Timothy Tyler Gardner, Jamshid Mirtalipov, Garrett Taylor, and CBC Vision, LLC (CBC), appeal from the circuit court's orders striking appellants' third amended complaint, finding that Jason Stuart, appellants' attorney, is a necessary witness and therefore cannot participate further in the litigation, and

---

[1] Kenneth Stuart is Jason Stuart's father. To avoid confusion, he will be referred to as "Kenneth" throughout the opinion.

finding appellants in contempt for failure to provide discovery per the court's order.[2] For reversal, appellants argue that appellee Arkansas Department of Finance and Administration through its then Secretary Larry Walther (DFA) did not meet its burden of proving that Stuart was a necessary witness to DFA's defense and that Stuart was not disqualified from filing an amended complaint. We hold that the circuit court did not abuse its discretion, and we affirm.

This case originated because DFA alleged that appellants bought luxury vehicles with funds provided by Dilmurod Akramov, the owner of CBC and sole owner of D&O Group. Appellants would put the titles in their own names then transfer ownership back to Akramov's D&O Group without receiving "cash or the equivalent of cash, such as a check or money order" in exchange. 006.05.212-GR-12.1 Ark. Admin. Code § (B)(3) (WL current through Dec. 15, 2023). The whole process usually took place within a matter of days. Each appellant would then claim a "trade-in credit" against the sales tax due on the purchase of a vehicle. In Arkansas, a consumer may claim a trade-in credit at the time of registration against the sales tax due on the purchase of a motor vehicle. Ark. Code Ann. § 26-52-510(b)(1)(C) (Repl. 2020). The amount of the credit is the "amount received from the sale of [a] used vehicle" if the sale occurred within forty-five days from when the

---

[2]While appellants appealed the contempt order, they failed to address this order in the briefs. This court will not address issues on appeal that are not developed, and we will not research or develop an argument for appellants. *See Spears v. Spears*, 339 Ark. 162, 3 S.W.3d 691 (1999); *Martin v. Pierce*, 370 Ark. 53, 257 S.W.3d 82 (2007); *Gray v. Thomas-Barnes*, 2015 Ark. 426, at 5, 474 S.W.3d 876, 879. Therefore, we will not address the contempt issue.

CV-23-59

consumer purchased a new vehicle.[3] *Id.* So, if no qualifying sales occurred, appellants are not entitled to the credit. DFA determined that these were not valid sales as required by Arkansas Code Annotated section 26-52-510 and denied the sales-tax-refund claims. Appellants challenged the determination through the administrative review process, which affirmed DFA's decision. Appellants then appealed to the circuit court for further review, and it concluded that appellants' counsel would be disqualified from representing them further.

Kenneth's and Greenhaw's sales tax protests were the first to proceed to the administrative hearing, so much of the information derives from that process. DFA alleged that the scheme started when Akramov, through either CBC or D&O Group, gave appellants a paper check that identified the specific vehicle that appellants were to buy. In other cases, funds were wired directly into appellants' bank accounts. Sometimes Stuart even funded the purchase of the vehicles through his law firm's IOLTA client trust-fund account. Spreadsheets provided during the administrative proceeding listed the various cash transfers that Kenneth and Greenhaw received from CBC and D&O Group, other transfers made through Stuart's IOLTA account, and the corresponding vehicles that Kenneth or Greenhaw purchased with each transfer. Kenneth testified that he did not create the spreadsheet submitted during his administrative hearing and could not testify about it but instead said, "I'm thinking Jason compiled the spreadsheet." DFA claims that there is no

---

[3]This window has since been expanded to sixty days by Act 277 of 2021.

other complete record of Kenneth's and Greenhaw's transactions besides these spreadsheets prepared by Stuart.[4]

After each of the appellants bought the luxury vehicles, he or she executed a bill of sale allegedly transferring ownership to D&O Group and then claimed a sales tax credit with the State based on those alleged "sales." Appellants have argued that even though they never received "cash or the equivalent of cash, such as a check or money order" in exchange for transferring vehicles to D&O Group, they are still entitled to claim sales tax credits on the basis of those alleged sales because D&O Group "forgave their debt." DFA believed the "debt forgiveness" related to the money appellants received from D&O Group to buy the vehicle. During Kenneth's deposition, however, he admitted that D&O Group never paid him the amount shown on the bill of sale. Akramov (owner of D&O Group) testified that the only records of "debt forgiveness" he knew of were records on his cell phone that he deleted. During the combined administrative hearing in the cases of Kenneth and Greenhaw, Stuart told the administrative law judge that D&O Group kept poor records, so he "supervised certain transactions" for D&O Group.

Akramov testified that he met all but three of the appellants through Stuart. Kenneth, Greenhaw, and Kevin Lightburn testified that they heard about the prospect of buying cars

---

[4]During subsequent administrative proceedings, the remaining appellants did not provide similar spreadsheets or the underlying information to DFA. Based on the information provided at Stuart's and Greenhaw's hearings, however, it appears that Stuart purchased other vehicles using his IOLTA account. The redacted IOLTA account statements indicate that D&O Group deposited $209,275 into Stuart's IOLTA account. However, only two transactions are accounted for: the $59,374.67 that Kenneth used to buy a BMW and the $62,911.70 that James Greenhaw used to buy a BMW. That leaves a balance of $86,988.63.

for D&O Group during poker games at Stuart's house. Lightburn testified that he was staying at Stuart's house when he learned of the opportunity to buy cars and transfer them to D&O Group. Kenneth testified that his son, Stuart, asked if he wanted to buy and sell cars for a profit. Akramov even gave Kenneth a check at Stuart's house during a poker game with the memo line "for Range Rover Deposit."

One required piece of information for a trade-in credit is the bill of sale. DFA believes that Stuart prepared many of the contested bills of sale in this case. The documents had a specific sales price and date, but DFA argues that it found no indication that any money changed hands either on or after the date on the bill of sale. Elizabeth Jessup had sales that were dated weeks before she registered the vehicles with the state in her name. Jessup, whom Akramov testified he did not remember meeting, was one of Stuart's college classmates.

Timothy Tyler Gardner testified that he had "oral agreements" with D&O Group and that they communicated only through Stuart. Akramov testified that D&O Group "entered into verbal contracts . . . through [Stuart] who negotiated the deals." DFA attempted to explore those statements by Akramov further, but Stuart halted the deposition.

DFA argued below, and the circuit court agreed, that DFA is entitled to present its defense that no sales occurred. DFA filed a motion to compel discovery, which the circuit court granted, but appellants did not comply. Therefore, the circuit court granted DFA's motion for contempt and ruled additionally that Stuart is a necessary witness in the case. Stuart then filed a third amended and supplemental complaint, to which DFA filed a motion to strike because he is a necessary witness and "[b]ecause of his prior disqualification, Mr.

Stuart may not . . . continue to file pleadings on behalf of the plaintiffs." The circuit court granted the motion to strike. Under Arkansas Rule of Appellate Procedure–Civil 2(a)(4) and (a)(8), we have interlocutory jurisdiction for the October 5 and October 25, 2022 orders.[5]

The standard of review for a circuit court's decision to disqualify an attorney is abuse of discretion. *Helena Country Club v. Brocato*, 2018 Ark. 16, 535 S.W.3d 272. The burden of proof regarding disqualification of counsel rests with the moving party. *Id.* According to Arkansas Rule of Professional Conduct 3.7, a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client. *Id.* Arkansas courts have the power to disqualify an attorney from continuing to represent a client. Disqualification is a necessary measure to protect and preserve the integrity of the attorney-client relationship. *Weigel v. Farmers Ins. Co.*, 356 Ark. 617, 158 S.W.3d 147 (2004). An opposing party must demonstrate three things to disqualify counsel on the basis that the attorney is a necessary witness: (1) the attorney's testimony is material to the determination of the issues being litigated; (2) the evidence is unobtainable elsewhere; and (3) the testimony is or may be prejudicial to the testifying attorney's client. *Id.* at 625, 158 S.W.3d at 153.

---

[5]We do not, however, have jurisdiction to hear the January 25, 2022 order because appellants did not comply with Arkansas Rule of Appellate Procedure–Civil 2(f)'s petition requirements, nor did they provide any argument or analysis on the motion-to-compel order.

CV-23-59

6

The crux of appellants' argument against Stuart's disqualification was that there was no evidence on the motion to disqualify—only argument of counsel. Appellants do not challenge the *Weigel* factors at all—only that there was support for them. That argument ignores the fact that DFA attached exhibits to its motion to disqualify, including excerpts from certified deposition transcripts and copies of checks, bank statements, and transaction records, and that appellants even filed a response to the motion to disqualify, incorporating over one hundred pages of their own exhibits from a prior motion. Appellants also filed a supporting brief that included almost one thousand pages of exhibits. They cite no authority for the proposition that the circuit court could not consider exhibits when ruling on the motion or that the circuit court was required to hold a separate evidentiary hearing. We hold that the circuit court did not abuse its discretion by concluding that each of the *Weigel* factors is present in this case.

Next, we turn to whether disqualification was necessary at this stage of the proceedings. In *Howard v. Baptist Health*, we held that "an attorney who is called to testify" can participate in "[o]ther pretrial activities, such as drafting discovery motions, drafting pleadings, and even entertaining settlement offers," because it does "not involve an attorney acting as a 'witness,'" but we limited that allowance to attorneys who were not disqualified under the *Weigel* test as outlined above. 2022 Ark. 214, at 5, 654 S.W.3d 809, 813. Stuart ignores that distinction and argues that *Howard* authorizes him to do everything on the legal front except represent appellants at trial. That is at odds with *Weigel*, however, which advances the common-sense approach that at some point an attorney who will be a necessary witness at trial cannot participate in further proceedings because it will conflict with his or

her clients' interests. We specifically ruled in *Howard* that Howard, an attorney, was not disqualified because the defendant's motion to disqualify her failed on two prongs of the *Weigel* test:

> Attorney Howard asserts that the defendants' motion to disqualify her fails first and foremost because her testimony would not be prejudicial to the estate. Second, Attorney Howard asserts that there were other eyewitnesses who could testify regarding Mrs. Howard's injuries—so the second prong of the *Weigel* test is not satisfied. Accordingly, Attorney Howard asserts that her disqualification should be reversed. We agree.

*Id*. at 4–5. That is not the case here.

In *Weigel*, we stated that attorney disqualification is considered "an absolutely necessary measure to protect and preserve the integrity of the attorney-client relationship." *Weigel*, 356 Ark. at 621, 158 S.W.3d at 150. The *Weigel* court established that its test takes into consideration many of the reasons for prohibiting an attorney from being both advocate and necessary witness: (1) an advocate who becomes a witness may be in the unseemly position of arguing his own credibility; (2) the roles of advocate and witness are inconsistent and should not be assumed by one individual; and (3) the attorney should not act as both trial counsel and a material witness because of the appearance of impropriety. *Id*. at 625–26, 158 S.W.3d at 152–54. Stuart's conduct implicates every concern we had in *Weigel* and is a complete departure from the facts established in *Howard*.

In that case, Howard was the appointed administratrix of her mother's estate. Some of her observations were part of the lawsuit against Baptist Health. She was not going to represent the estate at trial because under Rule 3.7 of the Arkansas Rules of Professional Conduct, she was a necessary witness. She could, however, handle pretrial matters without implicating *Weigel* because her testimony would not be prejudicial to the estate, and other

CV-23-59

8

people could testify to the injuries. *Howard*, 2022 Ark. 214, at 5. Howard did not implicate the integrity of the attorney-client relationship, but here, the circuit court determined that Stuart is disqualified under every prong of *Weigel*. When Stuart filed his third amended and supplemental complaint, DFA filed a motion to strike it because Stuart was a necessary witness and had been disqualified. The circuit court did not abuse its discretion by striking the complaint.

We find unpersuasive Stuart's argument that the circuit court's October 5, 2022 order determining that he was a necessary witness was insufficient to disqualify him from the case. As a general rule, orders are construed like any other instruments; the determinative factor is the intention of the court, as gathered from the order itself and the record. *Magness v. McEntire*, 305 Ark. 503, 506, 808 S.W.2d 783, 784 (1991). We look to the order itself, the pleadings, and any evidence presented. *Id*. The October 5 disqualification order stated, "The Court has reviewed the Arkansas Rules of Professional Conduct and has determined that Attorney Stuart would be a necessary witness in the matter at hand." The order further provided that "the Court applied the three-prong test adopted by the Arkansas Supreme Court in *Weigel v. Farmers Ins. Co., Inc.*, 356 Ark. 617, 158 S.W.3d 147 (2004)." In DFA's motion to strike the complaint, it argued that "this Court entered an order granting the Department's Motion to Disqualify Counsel Jason Stuart. . . . Because of his prior disqualification, Mr. Stuart may not . . . continue to file pleadings on behalf of the plaintiffs." In response, the circuit court granted DFA's motion to strike the third amended and supplemental complaint. Looking at the order itself, the pleadings, and the evidence

presented, we conclude that the circuit court had disqualified Stuart from further representing appellants.

As for appellants' remaining arguments, some implicated the merits of the underlying tax appeal and ask us to reverse the circuit court's interpretation of multiple Arkansas tax statutes. That is not before us at this juncture. Our review is limited to whether the circuit court abused its discretion in disqualifying Stuart. We decline to address, and give no opinion on, the scope of the circuit court's de novo review of the underlying tax assessments as set forth in Ark. Code Ann. § 26-18-406(c)(1)(A) (Supp. 2021). Nor do we opine on DFA's statutory duty to provide the taxpayers with "facts and evidence supporting the proposed assessment" under Ark. Code Ann. § 26-18-403(a)(2)(B)(iii) (Supp. 2021). These issues await further development at trial, and it would be improper for us to opine on their relevancy, if any, in the context of an interlocutory appeal about attorney disqualification.

Affirmed.

WOMACK, J., concurs without opinion.

KEMP, C.J., and WOOD, J., dissent.

**RHONDA K. WOOD, Justice, dissenting.** I agree with the circuit court's conclusion that Attorney Stuart was a necessary witness. The circuit court correctly applied the relevant three-factor test adopted in *Weigel v. Farmers Insurance Co.*, 356 Ark. 617, 158 S.W.3d 147 (2004). This test implements the prohibition on counsel serving as both advocate and witness in the same litigation. *See* Ark. R. Prof'l Conduct 3.7. Under precedent before 2022, our analysis would end there, and Stuart would be disqualified as counsel, as he should be.

CV-23-59

10

But this court unwisely departed from this straightforward analysis in *Howard v. Baptist Health*, 2022 Ark. 214, 654 S.W.3d 809. The *Howard* court created a bright-line rule that our Rule 3.7 doesn't apply during pretrial proceedings; it kicks in only when the attorney testifies at trial:

> Acting in a purely pretrial capacity implicates none of the policy concerns articulated in *Weigel* and its progeny. . . . Rule 3.7 concerns an attorney who is called to testify at trial. Other pretrial activities, such as drafting discovery motions, drafting pleadings, and even entertaining settlement offers, do not involve an attorney acting as a "witness."

*Id.* at 5, 654 S.W.3d at 813.

This new rule departed from settled precedent. *See Int'l Res. Ventures, Inc. v. Diamond Min. Co. of Am., Inc.*, 326 Ark. 765, 771, 934 S.W.2d 218, 222 (1996); *Bishop v. Linkway Stores, Inc.*, 280 Ark. 106, 126, 655 S.W.2d 426, 436 (1983) (supplemental opinion on denial of rehearing); *Calton Props., Inc. v. Ken's Disc. Bldg. Materials, Inc.*, 282 Ark. 521, 523–24, 669 S.W.2d 469, 471 (1984) (explaining "[a]n attorney who desires to testify must withdraw from the litigation").

The majority attempts to rewrite *Howard* as being about prejudice and claims Attorney Stuart's testimony here would "implicate the integrity of the attorney-client relationship" while the attorney in *Howard* had nothing prejudicial to say. But the *Howard* majority's analysis turned on timing, not on prejudice. In fact it was silent as to prejudice and was quite loud about the pretrial distinction. If the majority recognizes the error of *Howard* and wants to limit it, then it should do so explicitly and give clear guidance to clients, the bench, and the bar.

As noted above, the *Howard* majority stated that it reversed because "pretrial activities . . . do not involve an attorney acting as a 'witness.'" 2022 Ark. 214, at 5, 654 S.W.3d 813. And the procedural posture of this case and *Howard* is the same. Neither case had proceeded to trial and both remained within the confines of "pretrial activities." If *Howard* stands for anything, it is that testifying counsel may still engage in pretrial activities like drafting and filing an amended complaint.

In sum, the circuit court correctly disqualified Attorney Stuart based on pre-*Howard* precedent. But under *Howard*, an attorney drafting pleadings and taking part in discovery does not act as a witness under Rule 3.7. Until the court recognizes the error of *Howard*, it must abide by it. Thus, the circuit court's decision, although I agree with it in principle, must be reversed. For this reason, I must respectfully dissent.

KEMP, C.J., joins.

*The Stuart Firm, P.A.*, by: *Jason A. Stuart*, for appellants.

*Bradley B. Young*, *Nina Samuel Carter*, and *Kevin Christian*, Office of Revenue Legal Counsel, for appellee.