Sharlett CRAIG, Personal Representative of
the Estate of Earle L. Berrell, Deceased *v.*
Bonita CARRIGO and Edward J. Berrell

99-878 12 S.W.3d 229

Supreme Court of Arkansas
Opinion delivered March 9, 2000
[Petition for rehearing denied April 20, 2000.]

*Kay L. Matthews* and *William F. Sherman*, for appellant.

No response.

LAVENSKI R. SMITH, Justice. Attorney William Sherman appeals the order of the Pulaski County Probate Court disqualifying him as the attorney for the estate in an ancillary probate proceeding for decedent Earle L. Berrell, who died in Canada. The trial court disqualified Sherman after finding that Sherman appeared to represent not just the general interest of the estate but also the specific interest of one beneficiary to the detriment of other beneficiaries. Sherman argues three points on appeal. First, he contends that the legal arguments he made that were conducive to Arndt's interests under the Canadian will did not justify disqualifying him from representing the estate in the ancillary

proceeding. Second, Sherman argues that the trial court based its finding on insufficient evidence. Third, Sherman argues that he should be able to represent the personal representative in the appeal of this matter despite the fact that he testified below. We find merit in Sherman's points and reverse.

*Facts*

Earle L. Berrell, age sixty-four, died on October 20, 1997, in Makepeace, Alberta, Canada. At the time of his death, Berrell possessed real and personal property in Canada and Pulaski County, Arkansas. Berrell executed his last will and testament on February 4, 1994, entirely in his own handwriting. This holographic will stated that Berrell had no children and named only one beneficiary, Erika Arndt. This will specifically stated:

> This will makes null and void all previous wills and statements.

> In the event of my death, I wish Erika Arndt of Makepeace Alberta to have all of my property both real and personal in both Canada and the State of Arkansas. This is to include the house at 24 Coolwood Dr. Little Rock, Ark. and all monies held by Craig-Crews Inc. Realty to the house, all insurance money — United States, Veterans Ins., Mutual of Minn. & Equitable Ins. Co. My interest in the house at Makepeace Alberta, and my profits derived from sale of my Plymouth Sundance and Delta Motorhome (unless she decides to keep them for personal use). She is to get my bank accounts and my death benefits that might be available. She is to further get my checks owing to me or cash. She is to get the proceeds from my RRSP and my stocks I have not sold held by Richardson-Greenshields — She is to pay my outstanding debts from these monies —

> Signed this 4th day of February, 1994

> /s/Earl L. Berrell

> P.S. I am of sound mind and body and am not under any threat or coersion(*sic*).

> /s/Earl L. Berrell

This will, unlike Berrell's previously executed wills, did not mention Berrell's two children from previous marriages, namely Edward James Berrell and Bonita Berrell Carrigo.

About four months after Berrell's death, Arndt initiated Canadian probate proceedings, and the Canadian court appointed her the personal representative of the estate in Canada. She retained the Canadian law firm of Hoffman Dorchik, which filed the necessary pleadings on February 13, 1998. In that a portion of Berrell's estate was located in Arkansas, Arndt, through her Canadian attorneys, contacted Sherman, who had handled Berrell's mother's probate affairs in the 1980s, to open an ancillary probate proceeding in Arkansas. Upon being retained, Sherman filed the necessary papers with the Pulaski County Probate Court to open the ancillary probate. The original pleadings, filed on April 8, 1998, did not mention Berrell's children. In those pleadings, Arndt requested that she be appointed the personal representative of the estate in Arkansas as well.

In a letter dated April 8, 1998, Sherman acknowledged receipt of a letter from Gordon Hoffman of Hoffman Dorchik in which Hoffman apparently referred Arndt to Sherman to represent the estate in Arkansas. Sherman acknowledged that he had filed the ancillary probate, and detailed the filing and publication fees spent to date. In this letter, Sherman advised Hoffman that he had spoken to one of Berrell's friends, Sharlett Craig, who managed Berrell's property in Arkansas, and that Craig was holding $2,000 in escrow for the estate fees. Sherman also noted that he remembered that Berrell had a son, and requested that Hoffman find out whether this child had been adopted by Berrell. Sherman specifically advised Hoffman that the existence of a child not mentioned in the will could cause a problem in that Arkansas law allows a child pretermitted-heir rights to inherit when not specifically acknowledged in the will. Furthermore, Sherman indicated that his fees to handle the estate were $100 to $125 per hour, not to exceed the Arkansas statutory allowance to handle the estate. In this case, the Arkansas estate, valued at approximately $50,000, would not allow fees above $1,860.

Sherman filed an amended ancillary probate pleading on June 29, 1998, specifying that Berrell had two children who may be entitled to share in Berrell's Arkansas estate property. Sherman

followed up with a letter to the probate judge on July 18, 1998, in which Sherman advised the judge that Arndt was Berrell's common-law wife in Canada, and that after the ancillary probate order is issued, he would send the statutory notice to Berrell's son. Sherman also advised the judge that he was currently searching for the second child, a daughter, and would provide notice to her as well if she was located. Sherman further advised the judge regarding possible conflict-of-laws issues between Canadian and Arkansas law.

On August 4, 1998, the probate court issued an order granting and directing issuance of ancillary letters, but found that it would not be in the best interest of the estate in Arkansas to have Arndt remain as the personal representative for the ancillary probate because she resided in Canada. The court directed that an Arkansas citizen be appointed as personal representative. The court therefore appointed Craig personal representative in the Arkansas ancillary probate. Sherman continued as the ancillary estate's attorney.

Once Berrell's children were located, Sherman sent notice to them regarding the ancillary probate of their father's estate in Arkansas. Sherman notified Edward Berrell and Bonita Berrell Carrigo by letters dated August 10, 1998, and December 14, 1998, respectively. Sherman included in the letters the necessary notice information required by Ark. Code Ann. § 20-40-111(c). Sherman also included additional information including copies of documents filed in the ancillary probate, and noted that Craig would take the position that Canadian law governs the disposition of the assets of the estate. Further, Sherman advised Edward and Bonita that they could have rights as pretermitted children because they were not mentioned in the will, and determination of this issue was up to the probate court.

On December 23, 1998, Craig filed a motion for determination of heirship and legal interests in assets. The pleading noted that Berrell's holographic will did not mention his children and that under Arkansas law, this failure to mention the children could enable them to obtain rights to property in Arkansas as if Berrell had died intestate. Craig requested the court to determine what rights the children had to the property to advance the administration of the estate. Also on this date, Craig filed a motion to sell the real estate in Arkansas. Sherman sent a letter to Edward Berrell notifying him that he and Carrigo would probably be found heirs

to the real estate, but not to the personal property, and that Arndt may have a dower interest in the real estate. As with the prior correspondence, Sherman informed Edward Berrell and Carrigo that the probate court would make these determinations.

On February 12, 1999, Carrigo, through her attorney Ann C. Donovan, filed her notice of intent to take against the will or to contest the validity of the will. She specifically requested to be a pretermitted heir and that the Arkansas court should determine Arndt's status as a common-law wife. On March 3, 1999, the probate court issued an order requesting that the ancillary personal representative, Craig, file a trial brief laying out the issues which the court should address at the scheduled March 25, 1999, hearing to probate the estate. In response, Sherman wrote a letter to the probate judge on March 3, 1999, noting his concern that the issues involved might take more than two hours to address.

Craig, through Sherman, filed her trial brief as personal representative on March 10, 1999. In the brief, Craig identified the issues facing the court at the hearing, and opined that the personal property in Arkansas would probably be governed by the law of the domiciliary jurisdiction, namely Canada. However, the real property is subject to the law of Arkansas where it is located and would be subject to the pretermitted children's rights because the will omitted them. In addition, Craig surmised that while Canada does not recognize common-law marriages, that case law in that province appears to be moving towards recognizing them. Craig contended that Arkansas law requires courts to construe the will to give effect to the testator's wishes, and Berrell's will wanted Arndt to have everything. Craig requested that the court consider whether she could testify about a conversation she had with Berrell in which he indicated that he wanted Arndt to have all of his property. In closing, Craig presented two alternative approaches for the court. One, the court could follow the strict language of the Arkansas statutes indicating that the domiciliary estate jurisdiction should govern, in which case Arndt should get all of the real estate or, two, the court could follow the common-law rule that the situs of the real property determines distribution, and the children should inherit the land.

Carrigo filed her response brief on April 7, 1999. In her brief, Carrigo noted that Canada does not have common-law marriages,

but will recognize them from other locations, as will Arkansas. Furthermore, she noted that the Canadian probate court had not made a determination about Arndt's status as a common-law wife. Carrigo also contended that the court should address additional issues. Specifically, Carrigo raised the issue of whether extrinsic evidence is permissible to show the intent of the testator, since the Uniform Rules of Evidence and Arkansas case law would prevent such evidence. Carrigo also questioned whether Sherman could represent both Arndt and the estate because he "filed the original application as attorney for Erika Arndt." Carrigo asserted in this brief that this constituted a conflict of interest, and that the court should decide who Sherman represents. Craig, through Sherman, filed a reply brief on March 23, 1999, and attached the case of *Pauliuk v. Pauliuk*, [1986] 48 Alta. L.R.2d 25, for the proposition that common-law marriages are recognized in Alberta, Canada. Edward Berrell also questioned Sherman's status.

Because of allegations of Sherman's possible conflict of interest, the trial judge scheduled a phone conference with all of the parties and attorneys to settle the matter before the scheduled hearing. The phone conference began on April 13, 1999, but was postponed because of technical problems until the scheduled hearing. The judge also requested that the parties challenging Sherman's representation submit formal motions which Carrigo did through her attorney on April 19, 1999. Carrigo also submitted proposed findings of fact, to which Sherman objected on April 19, 1999. Craig also filed a response to the motion to disqualify Sherman.

The court heard the matter on April 20, 1999, with all of the parties and attorneys present in the courtroom. During the hearing, Arndt, Sherman, Craig, and Carrigo testified. At one point, the court asked Sherman several questions regarding his perception of his duties and obligations as attorney for the estate. A portion of that dialogue follows:

> THE COURT: Let me just ask you, Mr. Sherman, do you feel an obligation to the children, to Mr. Berrell's children, as attorney?
>
> SHERMAN: Of course, I do, Your Honor.
>
> THE COURT: And what is that obligation?
>
> SHERMAN: My obligation, first and foremost is to show that they have complete notice of the proceeding and a chance to make

their positions known, to be represented, and to have their issues, have their positions considered by the Court. I don't think I have a duty to agree with them. In fact, I said to the Court in the briefs, this question, to me, is a very close question and it's open. There's no deciding precedent from the Arkansas Supreme Court.

THE COURT: I guess I'm looking for something else from you. You have three people, two who may have the same interest, two children. Then you have Ms. Arndt. You seem to be advancing Ms. Arndt's position with respect to the letters and so forth and what you've done in this case. Who is to advance the position of the children? Do you feel any responsibility to the children to advance their position, as well?

SHERMAN: I don't think I can make — I've tried, as best I can, to show the Court the competing argument. I think, in general, Your Honor, I had concluded that the law of the situs would control the passage of realty. It wasn't a final conclusion but it looked that way as I researched it. I was trying to notify Ms. Carrigo, just trying to locate her, so I could give her notice of the case. This evolved over time. The letters which have been introduced, most of them came in the spring of 1998 and I was not in touch with Ms. Carrigo or Mr. Edward Berrell. I wasn't trying to keep them out. I was trying to locate them.

THE COURT: Well, I'm not passing judgment on what you've done. I'm just trying to understand your intention with respect to what you've done thus far. Now, with respect to Erika Arndt, you've done more than simply notify her.

SHERMAN: She contacted me —

THE COURT: But with respect to the children, you have not. Okay. Go ahead.

SHERMAN: She contacted me, her lawyers contacted me to handle the ancillary administration. Every case I've ever been involved in, it's always —

THE COURT: When I speak of Erika Arndt, I mean Erika Arndt as a devisee or as a person who lived with Earle Berrell prior to his death. I'm not talking about her as the administrator in Canada. But when you look at the three of them as potential beneficiaries of this estate you've notified the children but with respect to Erika Arndt you've notified her and you have advanced her position.

SHERMAN: I think in the briefing, the positions I've taken as a lawyer concur with the position she has, yes. I think in the final analysis that's where I am with the arguments.

\* \* \*

THE COURT: Now, Ms. Arndt then didn't have to hire a personal attorney to advance her position, but the children did, is that right? Because you're representing the estate and not either of the potential beneficiaries of the estate. Now, you said that the children seem to have hired competent counsel to advance their positions. What about Ms. Arndt? She hasn't had to hire a personal attorney to advance her position because it has been advanced by the attorney for the estate. Or has she? I don't know of one.

After Sherman testified, Craig testified regarding her status as personal representative of the Arkansas ancillary probate. Carrigo also testified, stating that she received the letters from Sherman, and that Sherman had called her regarding the sale of the Arkansas real estate. Carrigo testified that she felt that Sherman was trying to pressure her into selling the property, and that she was concerned because Sherman had filed pleadings for Arndt. Sherman was then recalled to the stand by the trial judge, who again questioned him. The trial judge questioned Sherman's use of the word "we" in the December 23, 1998, letter to Carrigo in which Sherman stated, "As you will see in the Motion to Determine Heirship, we have concluded that the Court will likely find that you and Edward James Berrell are heirs to the real estate, but not the personal property. Erika Arndt may have a dower interest in the real estate." In response, Sherman answered that "we" included himself and Craig, the personal representative. The trial judge further questioned why Sherman seemed to communicate with Arndt, but not the children, regarding the sale of the property in Arkansas. Sherman testified that it was some time after the ancillary estate was opened before he actually found the children. Furthermore, Sherman responded that there was a concern that the house would deteriorate, but that the house could not and would not be sold without the concurrence of all interested parties.

After examination of the witnesses, the court issued its decision finding that Sherman should be disqualified as the attorney for the ancillary probate because "it would appear that his efforts have

been directed toward advocating for Erika Arndt's interests. The attorney for the estate has advanced the position of one potential beneficiary of the estate to the exclusion of the two children of the decedent." The trial court entered this order on May 7, 1999. Sherman filed his Notice of Appeal the same day.

## Standard of Review

We review a trial court's decision to disqualify an attorney under the abuse-of-discretion standard. *Seeco, Inc, v. Hales,* 334 Ark. 134, 969 S.W.2d 193 (1993); *Berry v. Saline Memorial Hosp.,* 322 Ark. 182, 907 S.W.2d 736 (1995). An abuse of discretion may be manifested by an erroneous interpretation of the law. *Seeco, supra.* We have held that the Model Rules of Professional Conduct are applicable in disqualification proceedings. *Berry, supra; See also, Saline Memorial Hosp. v. Berry,* 321 Ark. 588, 906 S.W.2d 297 (1995); *Norman v. Norman,* 333 Ark. 644, 970 S.W.2d 270 (1998). Disqualification can be warranted in the absence of an ethical violation. It is an available remedy to a trial court "to protect and preserve the integrity of the attorney-client relationship." *Burnett v. Morgan,* 303 Ark. 150, 794 S.W.2d 145 (1990). Yet, it is a drastic measure to be imposed only where clearly required by the circumstances. *Burnett, supra.*

## I. Ancillary Probate Under Arkansas Law

In the instant case, it must be borne in mind that the action below is an ancillary probate proceeding. An ancillary administration is a separate but related proceeding to the administration of the decedent's estate in the jurisdiction where the decedent died. The primary administration of the decedent's estate in this case is occurring in Alberta, Canada. The ancillary proceeding serves to collect assets and pay debts of the decedent in that locality. Ancillary administration of an estate in Arkansas is governed by Ark. Code Ann. §§ 28-42-101—28-42-111. Under these code provisions, a foreign personal representative such as Arndt may file for ancillary letters in Arkansas by filing an authenticated copy of his or her domiciliary letters with the proper Arkansas probate court. Ark. Code Ann. § 28-42-102(a)(1). This foreign personal representative shall be given preference to become the personal representa-

tive in Arkansas unless the probate court determines that such appointment would not be in the best interest of the estate. Ark. Code Ann. § 28-42-102(b). If such a determination is made, as it was here, the court may order the issuance of ancillary letters here to a qualified person, other than the domiciliary personal representative, pursuant to Ark. Code Ann. 28-48-101(b). Under Ark. Code Ann. § 28-48-101(a), a "hierarchy" of qualified people to act as personal representative of the estate in Arkansas exists. Under Ark. Code Ann. § 28-48-101(a), this order of priority includes:

> (a)(1) To the executor or executors nominated in the will;
>
> (2) To the surviving spouse, or his or her nominee, upon petition filed during a period of thirty (30) days after the death of the decedent;
>
> (3) To one (1) or more of the persons entitled to a distributive share of the estate, or his or her nominee, as the court in its discretion may determine, if application for letters is made within forty (40) days after the death of the decedent, in case there is a surviving spouse and, if no surviving spouse, within thirty (30) days after the death of the decedent;
>
> (4) To any other qualified person.

In the instant case, the probate court appointed Craig, an Arkansas resident, as the ancillary personal representative. Craig managed Berrell's property interests in Little Rock and was a logical choice as the ancillary personal representative under subsection (4) as "any other qualified person." Sherman, who had filed the initial paperwork on Arndt's behalf, continued as legal counsel for the appointed personal representative, Craig.[1]

---

[1] Ark. Code Ann. § 28-48-108(d) allows the personal representative to employ legal counsel in connection with the probate of the will or the administration of the estate. This attorney

> shall prepare and present to the probate court all necessary notices, petitions, orders, appraisals, bills of sale, deeds, leases, contracts, agreements, inventories, financial accounts, reports, and all other proper and necessary legal instruments during the entire six (6) months, or longer when necessary, while the estate is required by law to remain open.

Ark. Code Ann. § 28-48-108(d). Section (d) also indicates that the attorney's fee is based on the total market value of the real and personal property reportable to the probate court, regardless of who inherits the real and personal property.

## II. Sherman's Duties to the Estate in the Ancillary Probate

 Arkansas law requires the attorney retained by the personal representative to perform several legal tasks on behalf of the estate. Ark. Code Ann. § 28-48-108(d). One of the tasks is to give proper notice of the appointment of the personal representative to all persons having claims against the estate, including heirs and creditors, pursuant to Ark. Code Ann. § 28-40-111. The statute provides a form section (c) for that purpose. This form provides a basic notice of the proceedings, including the date of the will, the date of the death of the testator, the name of the personal representative, and notice of the time to file any objections to the will or claims against the estate.

 The record reflects that Sherman provided this information and more to Berrell's children once they were located. In addition to the required notice information, Sherman informed them by letter that their father's will was a holographic will that nominated Arndt as executrix and named her sole beneficiary of the assets of the estate. Sherman further explained that Craig, as ancillary personal representative, was taking the position that Canadian law applied to the will and distribution of the assets. However, Sherman indicated to both children and to the probate court that Berrell's failure to mention either child in his will gave the children inheritance rights in the Arkansas estate as if Berrell had died intestate. Sherman concluded from his research that Arkansas inheritance law would apply to the real estate but not the personal property in Arkansas.[2] Sherman opined in the letters to the children and the court that this would be an issue that the probate court would have to resolve.

---

[2] Sherman based his reasoning on several Arkansas statutes and cases. Under Ark. Code Ann. § 28-39-407(b), children not mentioned in the will have certain rights. Because the children were not mentioned in Berrell's holographic will, they are considered under Arkansas law to be "pretermitted children" allowed to take Arkansas property under the intestate statutes. Ark. Code Ann. § 28-9-203 details the general rules of intestate succession. Under this section, any real property in Arkansas would pass to the children despite the language of the will. Personal property, however, is not as clearly delineated for distribution because this statute seems to indicate that the personalty may pass to the heirs through the personal representative, although leading authorities indicate that distribution of personal property is governed by the domicile of the deceased. *See* Am. Jur. 2d *Executors and Administrators* § 1171 (1991). As such, if Canadian law governs the distribution of personal property, Arndt would take all the personalty because failure to mention adult children in a will created in Canada does not allow the children to take any of that property there.

Sherman also addressed the issue of whether Arndt, who had been identified in the Canadian probate as Berrell's common-law wife and who was receiving retirement benefits from a Canadian state agency as Berrell's common-law wife, would be recognized in Arkansas as Berrell's common-law wife for purposes of dower and curtesy under the Arkansas statutes. If she is considered a common-law wife in Canada, Arkansas would recognize that and allow her dower rights of one-third of all the lands for life and one-third interest in any lands sold, as well as one-third of the personal estate. Sherman advised the court that he believed that Arndt had been identified as a common-law wife in Canada by the probate court there, and cited *Pauliuk* and the fact that she was receiving Berrell's retirement benefits from a state agency in Canada for that proposition.

### III. The Probate Court's Order Disqualifying Sherman

In making its disqualification order, the probate court made specific findings in support of its ruling. In pertinent part, the court stated:

> Mr. William Sherman, attorney, efforts were diligent, earnest and honest in this case. The efforts of Mr. Sherman have been directed towards advocating for Erika Arndt's interest with the exception of ultimately providing notice to the children of these proceedings.

> Mr. Sherman has advanced a position of one potential beneficiary of the estate to the exclusion of the two children of the decedent. The argument that Ms. Arndt should not have to hire or bear the expense of hiring separate counsel does not justify Mr. Sherman advocating for one potential beneficiary to the exclusion of the children. At the very least, the children have justifiably concluded their efforts are being prejudiced by the attorney's actions and filings in this estate.

From statements in the hearing on March 3, 1999, wherein Sherman appeared on behalf of the estate, but no other parties appeared, it can be surmised that Sherman considered himself to be counsel for the estate rather than Arndt's counsel. Sherman addressed payment to the personal representative of a fee for managing the decedent's real estate and notified the court of the probable signifi-

cant issues which could arise at the upcoming probate hearing. Sherman gave a brief overview of those issues, including the issue regarding Arndt's status as a common-law wife in Canada and the effect of that on the property in Arkansas, and then stated:

> I represent the estate, I think it's my duty to show both arguments on that issue. I think that Ms. Donovan will do a good job of arguing her client's position. And I'd just alert the court to the fact we do have that very unique question, which is both interesting and difficult.

After hearing the matter on April 20, 1999, the trial court felt Sherman's representation of the estate disadvantaged the pretermitted children, though finding no conflict of interest.

■ As stated in *Saline, supra,* "[t]he primary reference in any modern day disqualification case is to Rule 1.7 of the Model Rules of Professional Conduct." Rule 1.7 of the Arkansas Model Rules of Professional Conduct defines conflicts of interest. Generally under the rule, an attorney should not represent a client if the representation will be directly adverse to another client. In Arkansas, it is not necessarily a conflict of interest for an attorney to represent both the estate and the only devisee in the will. There must be an additional showing of prejudice. *King v. King,* 273 Ark. 55, 616 S.W.2d 483 (1981). In *King,* the testator died leaving a will in which he named and disinherited six of his seven children, but did not name the seventh or the seventh's children. As such, they were pretermitted heirs under the statute, and were allowed to take that portion they would have been allowed had the deceased died without a will. Also in that case, the attorney for the executor of the estate filed a brief in opposition to the pretermitted heirs' stance on an issue, and the court still did not find that a conflict of interest arose.

■ The trial court did not discuss conflicts of interest under Rule 1.7. While we could remand for consideration of the conflict-of-interest issue, it is well settled that we have the power to hear probate cases *de novo. Babb v. Matlock,* 340 Ark. 263, 9 S.W.3d 508 (2000). When the facts have been fully developed, a remand would serve little purpose. *Norman, supra.* Apparently, attorney ethics was not a factor in this case. In fact, the trial court complimented Sherman's honesty and diligence. Here, the core issue is whether the existence of parallel legal positions held by the personal representative for the estate, Craig, and one of the potential heirs of that

estate, Arndt, has been shown to be prejudicial to the other potential heirs. In other words, did Sherman's arguments on behalf of the personal representative charged with probating Berrell's holographic will which happened to be consistent with the interests of the sole devisee under the will prejudice the remaining potential heirs? We hold they did not.

█ The actions taken by Sherman throughout the proceedings below reflect conscientious legal services consistent with the duties of counsel for a personal representative in an ancillary probate. Mr. Sherman fulfilled his obligations of notice and adequately advised the court of the issues confronting it. His obligations as estate counsel would not include advocacy for any individual heirs, but neither would those obligations prevent the estate from having positions that proved consistent with those of some individual heirs. Based upon the preceding analysis, we hold the trial court erred in disqualifying appellant, and, accordingly, we reverse.

Reversed.