Cite as 2020 Ark. App. 229

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-19-472

RICHARD HESSEE

APPELLANT

V.

SIMOFF HORSE TRANSPORT, LLC
APPELLEE

OPINION DELIVERED: APRIL 15, 2020

APPEAL FROM THE GARLAND
COUNTY CIRCUIT COURT
[NO. 26CV-18-1231]

HONORABLE JOHN HOMER
WRIGHT, JUDGE

AFFIRMED

## ROBERT J. GLADWIN, Judge

Richard Hessee appeals the order of the Garland County Circuit Court denying his motion to dismiss Andrew Simoff Horse Transport, LLC's (Simoff) Application for Registration of Foreign Judgment (Application) and finding that the foreign judgment was entitled to full faith and credit in Arkansas. Hessee argues that (1) the circuit court erred in finding that service of process in the Delaware action was sufficient for purposes of registration of the foreign judgment; (2) the circuit court erred in failing to make a determination as to whether the Delaware court had personal jurisdiction over Hessee; (3) the underlying default judgment is void because the Delaware state court lacked personal jurisdiction over Hessee; (4) the circuit court erred in registering the foreign default judgment without a hearing; and (5) the Delaware default judgment was not eligible for registration under the Uniform Enforcement of Foreign Judgments Act (UEFJA). We affirm.

## I. *Facts and Procedural History*

Hessee, an Arkansas resident, rented a place where he stayed in New Castle, Delaware, from April to late August 2017, while his racehorses were training and racing at Delaware Park Racetrack. One of Hessee's trainers, Michael Catalano, states in an affidavit that during the time he worked training Hessee's horses at Delaware Park, Hessee lived in New Castle, Delaware, and was at Delaware Park every day. He stated that he had personal knowledge that Hessee made all shipping arrangements for transporting his horses to Delaware directly with Simoff.

A billing inquiry prepared by Simoff reflects that Hessee's horses were being shipped to and from Delaware Park from April 4 through May 2, at which point Hessee owed Simoff $16,825. Simoff sued Hessee in the Delaware Justice of the Peace Court for New Castle County, Court No. 13 on October 12. On December 19, 2017, Simoff filed an affidavit of service, stating:

> 1) I am Andrew Simoff, plaintiff or person authorized to act for plaintiff in this case.
>
> . . . .
>
> 3) On 11/21/17, I mailed to defendant by returned receipt mail a copy of the summons and complaint. I also included J.P. Civil Form No. 7 (Answer) and any additional materials originally filed with the Court. The form of mail service I used was Certified.
>
> 4) On 12/18/17, I received returned receipt from the Post Office and that receipt was returned marked "unclaimed" from the Post Office, the envelope is attached to this affidavit.
>
> 5) If returned "received" or "refused," the return receipt from the Post Office is attached to this affidavit. If returned "unclaimed" from the Post Office, the envelope is attached to this affidavit.

2

6) Further (only if the return receipt was returned "unclaimed"), I have sent a second mailing to the defendant at the address above on 12/19/17 via first class mail with a certificate of service from the Post Office. The certificate of mailing is attached.

In support of a request for a default judgment against Hessee, Simoff provided the following affidavit:

My name is Andrew Simoff and I am the principal of Simoff Horse Transport. In the course of my operation, I provided services to the Defendant Richard Hessee in Delaware by transporting horses to various racing venues. I am personally aware that Richard Hessee rented a place in Delaware and spent many days at Delaware Park Racetrack. The invoice attached hereto is true and correct and is an accurate account of the services that were provided to him for which he did not pay.

On May 10, 2018, the Delaware court entered a default judgment against Hessee, the notice of which states:

Because the above-named defendant(s), after receiving proper service of process, have failed to timely file an answer or appear for a scheduled trial and the above named plaintiff(s) have filed an affidavit in support of a default judgment, the court pursuant to J.P. Civil Rule 55 has entered a judgment by default as follows: Judgment Amount $15,000.00,[1] Court Costs $50.00

On August 8, Simoff filed the Application in the Garland County Circuit Court. The Application listed Hessee's address as 132 Running Deer Lane, Royal, Arkansas, 71968, the same address used in the Delaware proceedings. Hessee filed a motion to dismiss the Application on August 27.[2] Simoff responded to the motion on September 5. Hessee did

---

[1]The jurisdictional limit in the Delaware Justice of the Peace Court, the court in which Simoff obtained his default judgment against Hessee, is $15,000.

[2]Hessee's motion was based on Arkansas Rule of Civil Procedure 12(b)(5) (2019)—for "insufficiency of service of process," alleging he was not properly served with process in Delaware; (b)(2)—alleging he was not subject to the personal jurisdiction of the court in Delaware; and (b)(6)—alleging Simoff's Application failed to state facts upon which relief could be granted.

not request a hearing on his motion, and on February 25, 2019, the circuit court, via letter, advised counsel for the parties that it had determined that Simoff had complied with the laws of Delaware in obtaining its judgment, which was entitled to full faith and credit in Arkansas. A formal order was entered on February 27,

> As [Simoff] complied with the laws of the State of Delaware in obtaining its judgment against [Hessee], the judgment is entitled to full faith and credit in the State of Arkansas and therefore, the Motion to Dismiss is denied.

Hessee timely filed his notice of appeal on March 11, and this appeal followed.

## II. *Standard of Review*

A court's review of an appeal regarding registration of a foreign judgment requires interpretation of Arkansas statutes. *Agility Fin. Credit Union v. Largent*, 2018 Ark. App. 358, at 4, 552 S.W.3d 471, 473, reh'g denied (July 18, 2018) (affirming circuit court's decision that judgment creditor's registration of foreign judgment was null and void). Accordingly, the standard of review is de novo. *Id.*

## III. *Discussion*

### A. Was Service of Process in the Delaware Action Sufficient to Register the Judgment?

Hessee submits that at the circuit-court level, Simoff admitted that Hessee "was never personally served or sign[ed] for a registered or certified letter." Instead, Simoff claimed the following was proper service:

> [Simoff] sent a certified mailing to [Hessee] on November 21, 2017[,] which was ultimately returned unclaimed on December 18, 2017. On December 19, 2017, [Simoff] sent a second mailing via first class mail with a certificate of mailing from the United States Post Office. (See Exhibit A). This was proper service in the State of Delaware and, while not necessary, substantially complies with Rule 4 of the Arkansas Rules of Civil Procedure.

4

Hessee claims that Simoff offered nothing more than its own conclusion, failing to explain how applicable rules or caselaw support its position that service was proper. An exhibit attached to Simoff's response brief showed that Simoff received a return receipt marked "unclaimed" from the United States Postal Service and that it subsequently sent a second mailing via first class to 132 Running Dear Lane, Royal, Arkansas 71968. Because Simoff failed to demonstrate how this documentation demonstrates proper service on Hessee, Hessee claims that the circuit court erred in failing to dismiss the Application and in allowing Simoff to register its foreign judgment.

We disagree and initially note that the record reflects that service by certified mail, return receipt requested, was attempted in Delaware. When Hessee did not pick up the package, it was returned "unclaimed." The record also reflects that Simoff sent a second mailing to Hessee via first class mail with a certificate of service from the post office.

Arkansas Code Annotated section 16-66-602 (Repl. 2005), entitled "Filing and Status of Foreign Judgments," provides:

> A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the clerk of any court of this state having jurisdiction of such an action. The clerk shall treat the foreign judgment in the same manner as a judgment of a court in this state. A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of this state and may be enforced or satisfied in like manner.

There is no argument before us that Simoff failed to properly present the judgment before the Garland County Circuit Court. The issue before this court is whether the default judgment against Hessee was properly obtained pursuant to Delaware law.

Delaware Justice of the Peace Courts Rule 4–Civil sets forth several alternatives for service: (1) personally; (2) by leaving copies at the dwelling house or abode; (3) by certified mail, return receipt requested; (4) by first class mail with certificate of mailing; or (5) by delivering to an agent. Del. J.P. Civ. R. 4(f)(1)(I) (2017).

Rule 4(f)(1)(V)(A) states that upon a defendant referred to in subsection (f)(1)(I) of the rule, it is sufficient if the summons, complaint, and affidavit are served—in a civil action for debt, service is made by certified mail, return receipt requested—service is complete when signed for by the defendant, or by some person of suitable age and discretion acting as agent for the defendant, *or with the word "unclaimed" or "refused" noted thereon by postal authorities*. (Emphasis added.)

Moreover, Rule 4(h) applies when service is secured pursuant to the Delaware long-arm statute, codified at Delaware Code Annotated Title 10, section 3104:

> In an action in which the plaintiff serves process pursuant to [§ 3104], the defendant's return receipt and the affidavit of the plaintiff or the plaintiff's attorney of the defendant's nonresidence and the sending of a copy of the complaint with the notice required by statute shall be filed with the Court within 10 days of receipt by plaintiff or the plaintiff's attorney of the defendant's return receipt.

Subsection 3104(d) of the long-arm statute provides that when the law of the State authorizes service of process outside the State, the service, when reasonably calculated to give actual notice, may be made by

> (3) any form of mail addressed to the person to be served and requiring a signed receipt.

Subsection 3104(e) provides that "when service is by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the court." We note that in 2008, section 3104 was amended to

6

make service easier in Delaware. *See In re IMO Arot Estate*, C.A. No. 12915-MM, 2019 WL 1984033 (Del. Ch. Apr. 25, 2019); *Freeman Found. Charitable Lead Annuity Tr. v. Stutz*, C.A. No. CPU6-13-00062, 2014 WL 1852447 (De. Ct. Com. Pl. Apr. 25, 2014).

Delaware Code Annotated Title 10, section 9524(b)(4) discusses service of process and default judgments on civil actions for debt in the Justice of the Peace Courts.

> (b)(4) If the certified mail return receipt is returned marked "unclaimed" or "refused", or with some other indication of failed service, the court shall send a copy of the complaint and summons to the defendant by first class mail to the address provided by the plaintiff. . . . In the event of an application for a default judgment after such service, the Court may proceed pursuant to § 9537 of this title whether personal service is completed or not.

The certified mail in this case was returned "unclaimed," and the complaint and summons were then sent by first class mail in compliance with Delaware law.

Delaware Code Annotated Title 10, section 9537 authorized entry of a default judgment in this case, providing:

> (a) After verification of the return of service, if a defendant, being duly summoned, fails to appear by written motion or pleading at or before the date provided for in the summons or at any time to which the cause is regularly adjourned judgment by default may be entered. The amount of damages awarded shall be the amount proven to be properly due. Such proof may be by affidavit or, when judgment is entered by the Court, by such other information as may be required by the Court. A default judgment may be entered as follows:

> . . . .

> (2) By the Court. When entry of judgment may not be made by the clerk pursuant to paragraph (a)(1) of this section or when the Court, in its discretion, determines that entry of the default judgment should be made by the Court, the Court may enter the judgment. When entered by the Court, the Court may make investigation into and determine the amount of damages properly due. If in order to enable the Court to enter judgment, carry it into effect, or determine the amount of damages, it is necessary to establish the truth of any averment by evidence or to make an investigation of any matter,

7

the Court may conduct such hearings or order such references as it deems necessary and proper.

We hold that the underlying default judgment entered in this case tracks the relevant Delaware statutes. The Delaware court specifically found that service of process was proper. Foreign judgments are presumed valid, and Hessee had the burden of proving lack of jurisdiction. *Strick Lease, Inc. v. Juels*, 30 Ark. App. 15, 18, 780 S.W.2d 594, 595 (1989); *Dolin v. Dolin*, 9 Ark. App. 329, 333, 659 S.W.2d 954, 956 (1983); *see also Butler Fence Co. v. Acme Fence & Iron Co.*, 42 Ark. App. 30, 33, 852 S.W.2d 826, 828 (1993). The question before the court on this issue is whether Simoff's mailing the summons and complaint via first class mail after Hessee failed to claim the certified mailing is sufficient under Delaware law. The Delaware court found that it was, as did the Garland County Circuit Court, and we agree.

Despite Hessee's argument to the contrary, whether service of process was proper under Arkansas law has no bearing on this appeal. The issue in this case is whether service of process was sufficient to allow the Delaware court to obtain personal jurisdiction over Hessee, not whether jurisdiction could be had under Arkansas law.

We hold that service was accomplished in the manner necessary to permit the entry of a default judgment. While Arkansas law does not provide for service by first class mail when the certified letter is returned "unclaimed," Delaware law does. The underlying Delaware default judgment was founded on Delaware law regarding personal jurisdiction, and the Delaware court expressly ruled that Hessee had received proper service of process. Because that ruling is not erroneous under Delaware law, there was no impediment to entry of the default judgment.

Hessee submits that the circuit court made no determination as to whether the Delaware court had personal jurisdiction over him. Instead, the circuit court's order states simply, "As [Simoff] complied with the laws of the State of Delaware in obtaining its judgment against [Hessee], the judgment is entitled to the full faith and credit in the State of Arkansas and[,] therefore, the Motion to Dismiss is denied." Hessee argues that the circuit court's order is not "sufficiently detailed to give [the appellate court] a clear understanding of the analytical process by which ultimate findings were reached and to assure [the appellate court] that the trial court took care in ascertaining the facts." *Golf City, Inc. v. Wilson Sporting Goods Co., Inc.*, 555 F.2d 426, 433 (5th Cir. 1977).

Hessee's argument is basically that the circuit court's order lacks detailed findings of fact and conclusions of law; however, the UEFJA, codified at Arkansas Code Annotated sections 16-66-602 to –606, requires only that the foreign judgment be regular on its face and duly authenticated to be subject to registration. *Butler Fence Co.*, 42 Ark. App. at 33, 852 S.W.2d at 828. Under the Full Faith and Credit Clause, a foreign judgment is conclusive, except for the defenses of fraud in the procurement or want of jurisdiction in the rendering court. *Id.*; *Strick Lease, Inc.*, 30 Ark. App. at 18, 780 S.W.2d at 595. As fraud in the procurement was not an issue before the circuit court, the sole question addressed below was the jurisdictional issue.

Both parties filed briefs in the circuit court; the primary and controlling issue being whether the Delaware court had jurisdiction when the default judgment was entered. In its letter dated February 25, 2019, as well as in the subsequent order, the circuit court

specifically found that "the Plaintiff complied with the laws of the state of Delaware in obtaining its judgment."

In the absence of a showing to the contrary, this court must presume that a court acted properly and made the findings necessary to support its judgment. *McCracken v. McCracken*, 2009 Ark. App. 758, at 7, 358 S.W.3d 474, 479. A party is not entitled to a direct answer on every specific requested finding if the circuit court's findings adequately address the issues. *Lawson v. Sipple*, 319 Ark. 543, 550, 893 S.W.2d 757, 760 (1995). In *Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App. 409, at 4 n.2, 557 S.W.3d 286, 289 n.2, this court wrote:

> Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules. Although it may be the better practice for the circuit court to make findings on motions, the court's failure to do so is not error. Unless the contrary can be shown, we presume that the circuit court acted properly and made such findings of fact as were necessary to support its judgment.

(Internal citations omitted.)

Initially looking to whether there was a failure to state a claim upon which relief can be granted, we agree with Simoff that it is not an issue to consider regarding the Application. The only defenses to registration are fraud in the procurement or lack of jurisdiction. Looking to the fraud in the procurement and jurisdictional issues, the circuit court must have implicitly found that the Delaware court had jurisdiction because that is the only way the registration could be proper—as the circuit court expressly found in this case. We acknowledge that the circuit court's ruling was concise, but it nevertheless contains the only finding needed—Simoff complied with the laws of Delaware in obtaining its judgment.

10

C. Delaware Court's Personal Jurisdiction Over Hessee

Hessee challenges Simoff's claim that the Delaware court had personal jurisdiction over Hessee based on Simoff's assertion that it had "provided horse transportation services to [Hessee]." He submits that "the '[s]hipment of goods into a state by common carrier, without more, does not constitute 'transaction of business.'" *Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 386 (D. Del. 2009) (granting motion to dismiss for lack of personal jurisdiction). Accordingly, Hessee claims that Simoff's "billing inquiries," which purport to demonstrate that Simoff shipped Hessee's horses to Delaware, are inadequate to establish that Hessee was conducting business in Delaware sufficient for the Delaware court to exercise personal jurisdiction.

Hessee submitted an affidavit in this case claiming that (1) he has never been a resident of Delaware; (2) he does not own any property in Delaware; and (3) he does not own or operate any business in Delaware. Hessee asserts that the only "contacts" between the forum state of Delaware and him stem from the existence of his racehorses, a hobby that he has, in the past, undertaken for pleasure, and not for business. Accordingly, Hessee claims that he has not conducted business in the state of Delaware to the extent that a Delaware state court would have jurisdiction over him.

We disagree. In contrast to Hessee's affidavit, Simoff's affidavit stated that Simoff transported Hessee's horses to various racing venues, and Mr. Catalano's affidavit stated that he worked for Hessee during 2017, training his racehorses. The billing statement submitted to the Delaware court lists thirty-seven different horses shipped into or out of Delaware over a span of thirty-eight days. Although we have insufficient evidence to determine

11

whether Hessee actually earned any money from this endeavor, the activities related to the training, transporting, and running of racehorses is consistent with a business venture.

Due process requires only that certain minimum contacts exist between the nonresident and the forum state such that the maintenance of the suit will not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). It is essential for a finding of personal jurisdiction that there be some act by which the defendant purposefully avails himself of the privilege of conducting business in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253–54 (1958).

Delaware statutory law provides that a Delaware court can acquire jurisdiction over anyone who "transacts any business or performs any character of work or service in [Delaware]." Delaware Code Annotated Title 10, section 3104(c)(1). Some act on the part of the defendant must have occurred in Delaware, and the plaintiff's claims must arise out of that act. *See id*. Hessee utilized Simoff's transportation services to move his horses to and from the Delaware Park Racetrack so that he could conduct his horse-racing venture there. When viewed in conjunction with Mr. Catalano's affidavit, it is clear that Hessee had at least one employee in Delaware helping him conduct business within the state. Simoff's affadavit also referred to Hessee's horse training and racing activities in Delaware. Despite Hessee's suggestion that his horse-racing venture at Delaware Park was similar to simply trucking a product into the state and driving back out, the evidence before us supports the conclusion that Hessee was, in fact, transacting business in Delaware.

Moreover, foreign judgments are presumed valid, and Hessee had the burden of proving lack of jurisdiction. *See Strick Lease*, *supra*. In the absence of a showing to the

12

contrary, this court must presume that a court acted properly and made the findings necessary to support its judgment. *See McCracken*, *supra*. Accordingly, we hold that the Delaware court properly exercised personal jurisdiction over Hessee.

D. Was a Hearing Required Before Registering the Foreign Default Judgment?

Hessee notes that no hearing on his motion to dismiss the Application was ever held. Hessee argues that by allowing Simoff to register the foreign default judgment without first holding a hearing, the circuit court committed reversible error. Hessee cites *Volunteer Transportation, Inc. v. House*, 357 Ark. 95, 103, 162 S.W.3d 456, 461 (2004), in which our supreme court reversed a default judgment and remanded for a hearing on damages. *Id.* He maintains that although oftentimes whether to hold a hearing is discretionary, when no response was filed, as in Simoff's initial lawsuit seeking default judgment, the circuit court should have held a hearing before ruling on whether to register this default judgment. *See Loveless v. Agee*, 2010 Ark. 53 (reversing and remanding for the court to hold a hearing on the motion to dismiss).

We disagree and hold that no hearing was mandated on Hessee's motion to dismiss the Application. The law of Delaware allows the court to award damages based on affidavits, which is what was done in this case. Arkansas Rule of Civil Procedure 78(c) (2019) provides in relevant part that "[u]nless a hearing is requested by counsel or is ordered by the court, a hearing will be deemed waived and the court may act upon the matter without further notice after the time for reply has expired." The record on appeal contains no request for a hearing from Hessee; therefore, he waived any right he might have had for a hearing.

Although no hearing was held on Hessee's motion to dismiss, the circuit court provided Hessee more than sufficient time to file a response to Simoff's Application. There is no indication that the circuit court failed to "consider the timely written response" filed by Hessee. *Loveless*, *supra*. Hessee filed his motion to dismiss on August 27, 2018, and it was some 184 days later that the circuit court entered its order denying the motion to dismiss.

While it is true that no hearing was held in the underlying Delaware case, the Delaware court properly followed the statutory provisions of Delaware Code Title 10, section 9537, which authorized the entry of a default judgment in this case. In Delaware, proof of damages in a default judgment case may be proved by affidavit. Simoff submitted an affidavit to which it attached the invoices that reflected the amount due. The damages in this case were determined on the basis of the affidavit to which was attached an itemized list of charges made to Hessee's account. This is not a case in which the amount of damages was speculative—Simoff hauled the horses, charged Hessee for each horse transported as documented in Simoff's affidavit, and determined the total of the charges by reference to the affidavit. Holding a hearing was neither requested nor required because the Delaware court had before it sufficient evidence to determine the amount of damages.

E. Eligibility of Default Judgment for Registration Under UEFJA

Finally, Hessee cites multiple cases from other jurisdictions in support of his contention that the general rule prohibits the entry of foreign judgments that were obtained by default in appearance. Hessee urges that because the foreign judgment obtained against him was by default, it cannot be registered in Arkansas under the UEFJA.

14

Yet Hessee's argument overlooks, or ignores, Arkansas cases that hold exactly the opposite. In *Meisch v. Brady*, 270 Ark. 652, 658, 606 S.W.2d 112, 114 (1980), our supreme court held that a default judgment was "just as binding and forceful as a judgment entered after a trial on the merits of the case." And in *Nationwide Insurance Enterprise v. Ibanez*, 368 Ark. 432, 435–36, 246 S.W.3d 883, 886 (2007), our supreme court held that "for Full Faith and Credit purposes, default judgments are considered judgment on the merits" and "are equally protected against collateral attacks."[3]

The UEFJA requires only that the foreign judgment be regular on its face and duly authenticated to be subject to registration—both requirements have been met in this case. Simoff has demonstrated that jurisdiction in the Delaware court was proper under Delaware law. And although the service of process in the underlying Delaware case would not "strictly comply" with Arkansas' requirements, Simoff did comply with Delaware's relevant rules and statutes. The Delaware court specifically found that Hessee received proper service of process, and we hold that the circuit court's ruling to the same effect is neither clearly erroneous nor an error of law.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Barber Law Firm, PLLC*, by: *Michael L. Alexander* and *Rachel E. Hildebrand*, for appellant.

*Gary M. Lax*, for appellee.

---

[3]Although this is a direct rather than collateral attack on the foreign judgment, it is still not barred from registration.