Cite as 2020 Ark. App. 415

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-708

| | |
|---|---|
| CHRISTOPHER MINOR, LUCIE MINOR, AND TMA OPERATIONS, LLC, d/b/a TAYLOR MADE AMBULANCE | **Opinion Delivered:** September 16, 2020 |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION |
| APPELLANTS | [NO. 60CV-18-7327] |
| V. | |
| ROY BARNES | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellants Christopher Minor, Lucie Minor, and TMA Operations, LLC, d/b/a Taylor Made Ambulance (the "Minors") bring this interlocutory appeal from the order of the Pulaski County Circuit Court disqualifying their attorney, Joseph Falasco, from representing them in appellee Roy Barnes's lawsuit against them. For reversal, the Minors argue that (1) the circuit court erred in granting disqualification of counsel without first considering the *Weigel* test; and (2) the circuit court erred in granting disqualification because the factors of the *Weigel* test were not satisfied. Our jurisdiction of this appeal is pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(8). We affirm.

On January 11, 2018, Christopher Minor and his wife, Lucie Minor, entered into a confidentiality agreement with Roy Barnes, interim chief operating officer of Bridgers

Coaches, Inc., in connection with the Minors' potential purchase of Bridgers Coaches. The confidentiality agreement provides, in relevant part:

> You agree to use the services of Roy Barnes to advise, broker, and/or purchase all or any part of <u>Bridgers Coaches, dba Taylor Made Ambulance</u> and compensate said advisor with fees and equities. Fees may be paid by <u>Bridgers Coaches, dba as Taylor Made Ambulance</u> and/or purchasing party. Fees will be approximately three percent of the annual gross revenue.

After months of negotiations, on June 1, 2018, Christopher Minor, Lucie Minor, and Joseph Falasco, as members of TMA Operations, LLC, completed the purchase of Bridgers Coaches and its assets. Following the purchase, Barnes requested payment of the brokerage fee; however, the Minors refused.

On October 19, 2018, Barnes filed suit against the Minors to recover fees owed to him pursuant to the confidentiality agreement for services rendered in connection with facilitating the purchase of Bridgers Coaches, asserting claims of breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment. Barnes amended his complaint on April 23, 2019, to include a claim of promissory estoppel.

The Minors counterclaimed for declaratory judgment claiming that Barnes's request for a brokerage fee violates Arkansas real estate law and Arkansas securities law. The Minors asserted that Barnes's demand for a brokerage fee was illegal because it is unlawful to engage in unlicensed real estate activity.[1] Additionally, a license is required to bring an action for compensation associated with the sale of real estate.[2] Furthermore, it is unlawful for a person

---

[1]*See* Ark. Code Ann. § 17–42–105 (Repl. 2018).

[2]Ark. Code Ann. § 17–42–107(a) (Repl. 2018).

to transact business in Arkansas as a broker-dealer or investment advisor unless he is registered.[3] Even "attempting to effect purchases or sales of securities" requires a license.[4] While Barnes concedes that he was neither licensed by the Arkansas Real Estate Commission nor the Arkansas Securities Department, he claims that the transaction did not involve the transfer of real property or the sale of a security; therefore, neither was required.

Joseph Falasco, a member of TMA Operations, LLC, was serving as counsel for the Minors in the suit. On February 22, 2019, Barnes moved to disqualify Mr. Falasco, claiming that he is likely to be a necessary witness, which is a ground for disqualification under Arkansas Rule of Professional Conduct 3.7.

The motion to disqualify Mr. Falasco was heard on May 14, 2019. Barnes argued that he and Mr. Falasco had meetings and discussions concerning the confidentiality agreement, and negotiations were conducted for payment or alternatives to payment in lieu of the brokerage fee. One such alternative discussed, according to Barnes, was an employment agreement. Barnes claims that these discussions are material because it is an acknowledgment of the validity of the confidentiality agreement and Barnes's entitlement to a brokerage fee. Acknowledging the three-prong test outlined by our supreme court in *Weigel v. Farmers Ins. Co., Inc.*,[5] Barnes stated,

> The, the testimony is material because it goes to the nature of the transaction whether, you know, whether, this was a sale of real estate or, or, or Mr. Barnes' services involved something besides the sale of the real estate. It's not attainable [sic] elsewhere because he had a meeting along [sic] with Mr. Falasco and it's prejudicial

[3]Ark. Code Ann. § 23-42-301 (Supp. 2019).

[4]Ark. Code Ann. § 23-42-102(1)(A) (Supp. 2019).

[5]356 Ark. 617, 158 S.W.3d 147 (2004).

to Mr. Falasco's client because it's an acknowledgment of the validity of, of the confidentiality agreement. And I think if, if one reads the *Weigel* Court, *Weigel v. Farmers Ins.*, it should be noted that the Court also stated that an attorney should be disqualified if he has to cross examine a witness. So, say my client takes the stand and says well, Mr. Falasco said A, B, and C. Well, then Mr. Falasco has to, to cross examine him on that without, without being a witness.

In response, the Minors argued that Barnes failed to satisfy any of the requirements of the *Weigel* test as there had been no evidence to support what Mr. Falasco's testimony would be; therefore, it was not possible to make a determination regarding materiality, unobtainability, or prejudice. They go on to assert that because the nature of the transaction was at issue, whether or not the purchase of Bridgers Coaches involved the transfer of real property—which can be determined by examining the documents related to the purchase of Bridgers Coaches—Mr. Falasco's testimony is not material. The Minors contend that Mr. Falasco's testimony could not be unobtainable, as both Christopher Minor and Lucie Minor were also involved in the negotiations and purchase of Bridgers Coaches. Furthermore, the Minors denied that Barnes proved that they would be prejudiced by Mr. Falasco's testimony.

The circuit court granted the motion to disqualify. The Minors now bring this interlocutory appeal.

The disqualification of an attorney is an absolutely necessary measure to protect and preserve the integrity of the attorney-client relationship; yet it is a drastic measure to be imposed only where clearly required by the circumstances.[6] A circuit court's decision to

---

[6]*Craig v. Arrigo*, 340 Ark. 624, 12 S.W.3d 229 (2000); *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990).

4

disqualify an attorney is reviewed under an abuse-of-discretion standard.[7]  An abuse of discretion may be manifested by an erroneous interpretation of the law.[8] We have held that the Model Rules of Professional Conduct are applicable in disqualification proceedings.[9] However, a violation of the Model Rules does not automatically compel disqualification; rather, such matters involve the exercise of judicial discretion.[10]

Pursuant to Arkansas Rule of Professional Conduct 3.7,

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1)  the testimony relates to an uncontested issue;

(2)  the testimony relates to the nature and value of legal services rendered in the case; or

(3)  disqualification of the lawyer would work substantial hardship on the client.

As stated in *Weigel*, Rule 3.7 applies to the situation in which the opposing party seeks to call counsel as a witness.[11]  Additionally, in *Weigel* a test was adopted to determine whether disqualification is proper under those circumstances.[12]  Specifically, an opposing party must demonstrate three things: (1) that the attorney's testimony is material to the

---

[7]*Wilburn v. State*, 346 Ark. 137, 56 S.W.3d 365 (2001); *Craig*, 340 Ark. 624, 12 S.W.3d 229.

[8]*Id.*

[9]*Id.*

[10]*Norman v. Norman*, 333 Ark. 644, 970 S.W.2d 270 (1998).

[11]*Weigel*, 356 Ark. at 625, 158 S.W.3d at 153.

[12]*Id.*

5

determination of the issues being litigated; (2) that the evidence is unobtainable elsewhere; and (3) that the testimony is or may be prejudicial to the testifying attorney's client.[13]

The Minors first argue that the circuit court erred in granting disqualification without considering the *Weigel* test. They contend that according to our supreme court's holding in *Helena Country Club v. Brocato*,[14] the circuit court was required to consider the three-prong test set out in *Weigel* and that failure to do so constitutes an abuse of discretion amounting to reversible error.

In *Brocato*, a country club appealed the disqualification of its counsel arguing that the circuit court erred in granting the disqualification based solely on the potential for the attorney to be called as a witness without first applying or referencing the test laid out in *Weigel*.[15] In reversing, our supreme court held that imposing the drastic measure of disqualifying the club's counsel with no consideration of the *Weigel* factors amounted to an abuse of discretion.[16]

Here, in its order granting disqualification of Mr. Falasco, the circuit court stated, "For the reasons stated below, and those given orally from the bench, the Plaintiff's Motion to Disqualify Attorney is GRANTED." However, the circuit court did not provide reasons "below." Additionally, in its bench ruling, the circuit court stated the following:

---

[13]*Id.*

[14]2018 Ark. 16, 535 S.W.3d 272.

[15]*Id.*

[16]*Id.*

This is too close an issue, and I think I'm going to grant their Motion. I feel that it puts you in an impossible situation because if there's testimony by the Plaintiff that requires rebuttal, it's going to put the law firm who's presenting this issue on the stand or, of course, I guess you could get in closing argument, testify all you want. But that doesn't work too well. I think I'm going to grant that motion. I hate to do that because I know that your people have a right to hire who they want but that's just a little close.

The Minors contend that here, as in *Brocato*, the circuit court failed to consider the factors set out in *Weigel* and instead granted disqualification of counsel based solely on his potential to be called as a witness. First, we note that *Brocato* is distinguishable from the case at bar. In *Brocato*, (1) there had been no motion to disqualify and (2) no proof on the *Weigel* factors had been presented to the court.[17] In this case, a motion to disqualify was filed and all of the *Weigel* factors were extensively briefed and argued to the circuit court.

As for the Minors' contention that the circuit court's failure to reference *Weigel* in its order constituted reversible error, we do not agree. Our supreme court's holding in *Brocato* does not require the specific referencing of *Weigel* or its factors; it requires the consideration of the *Weigel* factors. A failure to reference does not equate to a failure to consider.

The Minors also argue that the circuit court erred in granting disqualification of Mr. Falasco because the factors of the *Weigel* test were not satisfied. As noted above, both parties extensively argued each of the *Weigel* factors. Despite the testimony and evidence before the circuit court, the Minors contend that the circuit court did not consider the *Weigel* factors and instead focused solely on counsel's likelihood to be called as a witness in the case.

---

[17]*Id.* at 6, 535 S.W.3d at 275–76.

Notwithstanding the lack of explicitness in its order granting disqualification, we find that the only way the circuit court could have determined that Mr. Falasco's testimony would be problematic, as noted in its oral ruling, is if it had already found his testimony satisfactory to the *Weigel* factors—i.e., that his testimony is material, unobtainable elsewhere, and prejudicial to the Minors. Although the circuit court did not make clear that it applied the *Weigel* factors, we hold that it did. While, for clarity and purposes of review, the better practice may be for the circuit court to reference *Weigel* in its order of disqualification of counsel, there is no requirement to do so, and failure to make such reference does not constitute an abuse of discretion. We have repeatedly stated that in the absence to the contrary, this court must presume that a court acted properly and made the findings necessary to support its judgment.[18] We therefore affirm the circuit court's disqualification order.

Affirmed.

ABRAMSON and SWITZER, JJ., agree.

*Quattlebaum, Grooms & Tull, PLLC*, by: *E.B. Chiles IV* and *Joseph R. Falasco*, for appcllants.

*James & Carter, PLC*, by: *Daniel R. Carter*, for appellee.

---

[18] *See Hessee v. Simoff Horse Transport, LLC*, 2020 Ark. App. 229, 599 S.W.3d 694.