Kelly Sullivent WHITMER  *v.*  Jeromy SULLIVENT

07–419                                           284 S.W.3d 6

Supreme Court of Arkansas
Opinion delivered May 1, 2008

*Wm. C. Plouffe, Jr.*, for appellant.

*James M. Pratt,* for appellee.

DONALD L. CORBIN, Justice. By certification memorandum dated April 2, 2008, the Arkansas Court of Appeals certified the question of whether an attorney, who is also a prosecutor, should be disqualified from representing a parent in a change-of-custody suit when criminal charges are brought by the prosecuting attorney's office against the other parent's current spouse. We hold that disqualification is not required because there is not a direct conflict of interest nor is this a case of dual representation, and we remand to the court of appeals for further action.

On August 5, 2002, Appellant Kelly Sullivent Whitmer and Appellee Jeromy Sullivent divorced. Under the terms of the divorce decree, they were awarded joint custody of their three minor children, E.S., G.S., and H.S. Kelly was designated as the physical custodian, with Jeromy receiving reasonable and seasonable visitation privileges. On July 18, 2003, after picking the children up for a visitation period, Jeromy noticed large bruising on G.S.'s buttocks. Jeromy reported the bruising to the Sheridan Police Department and the Department of Health and Human Services. It was later determined that the bruising was the result of a whipping administered by Keith Whitmer, Kelly's live-in boyfriend. On July 25, 2003, through his attorney, James M. Pratt, Jr., Jeromy filed a petition for a change of custody with the Calhoun County Circuit Court. On August 15, 2003, an agreed order was entered leaving physical custody with Kelly, but requiring that, pending future court orders, Keith was not to be present at any time when the children were with Kelly. About a month later, Kelly married Keith, and the two resumed living together with the children.[1]

A little less than a year after their marriage, from June 25, 2004, to July 1, 2004, Keith repeatedly assaulted Kelly while in the children's presence. In addition to beating Kelly, who was eight months pregnant with his child, Keith also stabbed her in the stomach with a barbeque fork. On July 2, 2004, Kelly filed an order-of-protection affidavit against Keith with the prosecuting attorney's office of the Thirteenth Judicial District. The affidavit

---

[1] In its change-of-custody order, the circuit court stated that the marriage took place in late August 2003, but Kelly testified that they married September 13, 2003.

contained a detailed description of the abuse, as well as the following statement, "I am afraid he is going to kill me and hurt my children."

On July 8, 2004, Jeromy filed an ex parte petition for temporary custody of the children, to which he attached a copy of Kelly's affidavit. The circuit court granted his petition that same day. About three months later, on September 30, 2004, Kelly filed a motion to disqualify Pratt, Jeromy's attorney who was also prosecutor for the Thirteenth Judicial District, from the case due to a conflict of interest or the appearance of one. Therein, Kelly alleged that this conflict existed because the prosecutor's office was protecting her interest in the criminal prosecution of Keith, but was representing opposing interests in this case. Although she acknowledged that Pratt had arranged for a special prosecutor in the criminal matter, she argued that he should be disqualified because of the past conflict between the two cases. This motion was denied by the circuit court because Pratt had recused in his capacity as prosecutor and the conflict or appearance of a conflict of interest had been removed. The court also reminded the parties that Pratt had been Jeromy's counsel of record for "a considerable period of time preceding [Kelly's] application to the prosecuting attorney's office on July 2, 2004[.]"

Over the course of the next two years, a multitude of proceedings took place before the circuit court. Then, on November 14, 2006, the circuit court granted Jeromy's petition for a change of custody. Kelly filed a motion for reconsideration or new trial on November 27, 2006, and on January 25, 2007, she filed a notice of appeal from the November 14 order. On January 29, 2007, the circuit court, on its own motion, entered an order explaining, in part, that

> [Kelly's] motion was filed on November 27, 2006, more than 10 days after the court's disposition order of November 14, 2006. No action was taken on the motion by the court. Pursuant to Rule 4 of the Rules of Appellate Procedure, the motion was deemed denied 30 days following its filing.

On February 2, 2007, Kelly filed another motion for reconsideration and new trial that the circuit court never ruled on. She then filed a supplemental notice of appeal on February 26, 2007, from the January 29 order and all preceding orders. The case was certified to us by the court of appeals, pursuant to Ark. Sup. Ct. R. 1-2(a)(5), to resolve the

issue of whether the circuit court abused its discretion by refusing to disqualify Jeromy's attorney, who was also the prosecutor, when Kelly's husband[2] was charged with battery for assaulting her.

Before addressing the certified question, we note that in response to Kelly's appeal, Jeromy has raised the jurisdictional issue of whether the appeal should be dismissed as untimely. Rule 4(a) of the Arkansas Rules of Appellate Procedure–Civil sets forth that "a notice of appeal shall be filed within thirty (30) days from the entry of the judgment, decree or order appealed from." Additionally, Rule 4(b)(1) allows for an extension of time for filing a notice of appeal; specifically,

> [u]pon timely filing in the circuit court of a motion for judgment notwithstanding the verdict . . . a motion to amend the court's findings of fact or to make additional findings . . . a motion for a new trial . . . or any other motion to vacate, alter, or amend the judgment made no later than 10 days after entry of judgment, the time for filing a notice of appeal shall be extended for all parties. The notice of appeal shall be filed within thirty (30) days from the entry of the order disposing of the last motion outstanding. However, if the circuit court neither grants nor denies the motion within thirty (30) days of its filing, the motion shall be deemed denied by operation of law as of the thirtieth day, and the notice of appeal shall be filed within thirty (30) days from that date.

Computation of the time period for securing an appeal is done in accordance with Ark. R. Civ. P. 6. Rule 6(a) provides the following formula:

> In computing any period of time prescribed or allowed by these rules . . . the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, legal holiday, or other day when the clerk's office is closed, in which event the period runs until the end of the next day that the clerk's office is open. When the period of time prescribed or allowed is less than fourteen (14) days, intermediate Saturdays, Sundays, or legal holidays shall be excluded in the computation. As used in this rule and Rule 77(c), "legal holiday" means those days designated as a holiday by the President or Congress of the United States or designated by the laws of this State.

---

[2] Kelly and Keith divorced on July 18, 2006.

In this case, the circuit court entered its change-of-custody order on November 14, 2006. In accordance with Rule 6, November 18 (Saturday), November 19 (Sunday), and November 23 (Thanksgiving) are excluded from computation, thus setting the due date for any postjudgment motions at November 29, 2006. Kelly timely filed her first motion for reconsideration or new trial on November 27, 2006. The circuit court did not rule on the motion within thirty days, so it was deemed denied on December 27, 2006. *See* Ark. R. App. P.–Civ. 4(b)(1). Accordingly, the notice of appeal was due thirty days from the deemed-denied date, or January 25, 2007. Kelly timely filed her notice of appeal on January 25, 2007, thus the appeal is properly before this court. We will now address the certified issue of whether disqualification was required.

Disqualification of an attorney is an absolutely necessary measure to protect and preserve the integrity of the attorney-client relationship; yet, it is a drastic measure to be imposed only where clearly required by the circumstances. *Weigel v. Farmers Ins. Co., Inc.*, 356 Ark. 617, 158 S.W.3d 147 (2004); *Craig v. Carrigo*, 340 Ark. 624, 12 S.W.3d 229 (2000). We review a circuit court's decision on whether to disqualify an attorney under an abuse-of-discretion standard. *Id.* An abuse of discretion may be manifested by an erroneous interpretation of the law. *Id.* The Arkansas Rules of Professional Conduct are applicable to disqualification proceedings. *Id.* However, a violation of these rules does not automatically compel disqualification; rather, such matters involve the exercise of judicial discretion. *Id.*

■ Rule 1.7 of the Arkansas Rules of Professional Conduct sets forth that, generally, a lawyer cannot represent a client if the representation involves a concurrent conflict of interest. Under the rule, a concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client[']s; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer[.]

Ark. R. Prof'l Conduct 1.7(a)(1)-(2). Most importantly, Rule 1.7 requires disqualification if there is a *concurrent* conflict of interest. In

this case, there was no direct or concurrent conflict because Pratt, in his duties as prosecutor, represented the people of the Thirteenth Judicial District, and not Kelly, who was the complaining witness. *Cf. State Office of Child Support Enforcem't v. Terry*, 336 Ark. 310, 985 S.W.2d 711 (1999) (explaining that a prosecutor empowered to bring charges against a noncustodial parent for failure to pay child support does not represent the custodial parent, such that a conflict of interest cannot exist even if the prosecutor had previously prosecuted the custodial parent for the same crime).

■ This is also not a case of dual representation requiring disqualification. In *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982), this court explained that an attorney may not sue and defend the same client at the same time. *Cash* involved a completely distinguishable situation than what is now before this court. Here, Pratt was acting as Jeromy's attorney when the custody suit was filed against Kelly. Then, when the criminal charges were brought against Keith, Pratt was acting as a representative of the people of the district. Therefore, Pratt was not "defending" Kelly's interests while he was also "suing" her, and *Cash* is inapplicable.

■ Finally, even though no actual conflict existed, the proper steps were taken to remove even the appearance of a conflict of interest. Shortly after the criminal prosecution began, and on the same day Kelly filed her motion to disqualify, an order for designation and appointment of a special prosecutor was entered in the State's case against Keith Whitmer. Not only did Pratt remove himself from the criminal proceedings, he also removed his staff. We agree with the circuit court that this recusal removed the appearance of a conflict of interest. We further hold that withdrawal from both cases was not required, especially in light of the fact that Pratt had been representing Jeromy in this case for over a year before Kelly's affidavit was filed with the prosecutor's office. *See* Ark. R. Prof'l Conduct 1.11(d)(2)(i).

Accordingly, there was no abuse of discretion by the circuit court in refusing to disqualify Jeromy's attorney. Having answered the certified question, we remand the case to the court of appeals for further action.