Cite as 2024 Ark. 68

# SUPREME COURT OF ARKANSAS
**No.** CR–23–630

|  |  |
|---|---|
| DARREN TAYLOR | **Opinion Delivered:** April 25, 2024 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. 60CR–21–4157] |
| V. | |
| STATE OF ARKANSAS | HONORABLE LEON JOHNSON, JUDGE |
| APPELLEE | |
| | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Under the Arkansas Rules of Professional Conduct, a lawyer cannot represent a client in a matter if the lawyer already participated in the matter personally and substantially as a government employee. (The government can waive this disqualification by giving written consent.) This disqualification is imputed to the attorney's entire firm unless the attorney has been timely screened and prompt notice given to the government agency.

In this case, the circuit court disqualified defense counsel's entire firm because one of its attorneys had worked as a deputy prosecutor on a matter involving the alleged victim and the defendant. In that capacity, the attorney interviewed the victim about similar allegations she had against the defendant in another county. The circuit court concluded the attorney's participation had been on the same matter and substantial and the firm had not timely screened the attorney or given prompt notice. The defendant, now appellant, filed an interlocutory appeal from the disqualification. We affirm for the reasons explained below.

I. *Factual Background*

The State charged Darren Taylor with incest in the Pulaski County Circuit Court. The felony information alleged he had sexual intercourse with a minor relative. The State later amended the information to add rape. Bobby Digby and the Digby Law Firm (Firm) entered an appearance on Taylor's behalf. Almost a year and a half later, Mack Ivy joined the Firm and began assisting with Taylor's defense. The State moved to disqualify both Ivy and the Firm.

The State's concern was that before joining the Firm and participating in Taylor's defense, Ivy had worked as a deputy prosecuting attorney in Lonoke County. The State claimed Ivy had met with the victim about similar allegations she had against Taylor occurring in Lonoke County. The State alleged Ivy reviewed investigatory files, created a memorandum that was "work product," and communicated with the Pulaski County Prosecutor's Office about its open investigation involving the family. Further, according to the State, the victim recalled meeting with Ivy in his role as a deputy prosecutor.

The State argued Ivy should be disqualified from now representing Taylor under Arkansas Rule of Professional Conduct 1.11, which covers conflicts for former government attorneys. The State also argued that the conflict should cover attorney Bobby Digby and the entire Firm. The circuit court held a hearing to consider the disqualification motion. The State repeated allegations from its motion. The State also alleged that Ivy had discussed the case with Digby and that it was too late to screen off Digby and the rest of the Firm.

Digby called Taylor, the defendant, to the stand. Taylor testified that he knew Ivy had indeed met with the victim about her allegations in Lonoke County. Taylor also testified

2

that he would waive any conflict, to the extent one existed. Next, Digby argued that the victim was never a "client" of the Lonoke County Prosecutor's Office, and so Rule 1.11 did not apply. Digby also argued that the State had not provided, even for in-camera review, any confidential information they alleged Ivy had been privy to as deputy prosecutor. Nor did the State prove, Digby argued, that Ivy "substantially participated" in the matter, which Rule 1.11 requires for disqualification.

The court issued a ruling from the bench granting the motion to disqualify. The court later entered a written order memorializing the ruling. In the order, the court's relevant conclusions were that (1) the matter in Lonoke County and Pulaski County were the same for the purposes of Rule 1.11; (2) Ivy had substantially participated as a deputy prosecutor in Lonoke County by interviewing the victim; (3) the entire Digby Law Firm was disqualified because Ivy was not timely screened and the State had not received proper notice. Taylor filed an interlocutory appeal from this order of disqualification.[1]

## II.  *Law and Analysis*

We review a decision to disqualify counsel under the abuse-of-discretion standard. *Park Apartments at Fayetteville, LP v. Plants*, 2018 Ark. 172, at 3, 545 S.W.3d 755, 757. A circuit court abuses its discretion when it acts thoughtlessly, improvidently, and without due consideration. *Valley v. Phillips Cnty. Elec. Comm'n*, 357 Ark. 494, 498, 183 S.W.3d 557, 560 (2004). "Discretion means that the rules are not inflexible, that there is some leeway in the exercise of sound judgment." *Id*. The Rules of Professional Conduct apply in

---

[1]We allow interlocutory appeals from orders disqualifying counsel in a criminal case. *See Samontry v. State*, 2012 Ark. 105, at 6, 387 S.W.3d 178, 182.

disqualification proceedings. *Samontry*, 2012 Ark. 105, at 5, 387 S.W.3d at 182. Here, because the State filed the motion to disqualify, it carried the burden of proof. *See id*. at 9, 387 S.W.3d at 183.

Taylor first argues that the State failed to meet its burden because it did not present either witnesses or evidence at the hearing and relied only on arguments from counsel. But certain facts were uncontested: Ivy was a former Lonoke County deputy prosecutor who interviewed the victim about allegations of sexual misconduct involving Taylor and the same victim. Also, the circuit court heard testimony from Taylor himself. Taylor confirmed that he knew Ivy had been a prosecutor and had met with the victim. The circuit court was entitled to rely on this information when it made the decision to disqualify.

Turning to the merits, the legal issue here was whether Ivy, and further the Firm, should have been disqualified under Arkansas Rule of Professional Conduct 1.11.[2] This rule is titled "Successive Government and Private Employment" and provides, in relevant part:

> (a) Except as law may otherwise permit a lawyer who has formerly served as a public officer or employee of the government:
>
> (1) is subject to Rule 1.9(c)[3] and
>
> (2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.

---

[2]The Arkansas Rules of Professional Conduct are based on the model rules adopted by the American Bar Association. David Newbern et al., *Arkansas Civil Practice and Procedure* § 28:18 (5th ed. 2011).

[3]Rule 1.9 is titled "Duties to former clients."

4

(b) When a lawyer is disqualified from representation under paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such matter unless:

(1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.

Ark. R. Prof'l Conduct 1.11.

Broken down, this rule prohibits a former government lawyer from representing "a client in connection with a *matter* in which the lawyer participated personally and *substantially* as a public officer or employee [absent written consent]." Ark. R. Prof'l Conduct 1.11(a)(2) (emphasis added). Further, if the disqualified lawyer works at a law firm, no lawyer in the firm may continue representation in the matter either. But an exception to this firm-wide disqualification exists if the firm takes proactive steps to insulate the affected lawyer from the rest of the firm. The firm may continue the representation under this exception when the former government lawyer, among other things, has been "*timely screened from any participation*" and "written notice is *promptly* given" to the government. *Id*. R. 11.1(b)(1), (2) (emphasis added).

Taylor first argues the State provided no proof that the Lonoke County case and the current Pulaski County case were the same "matter" for purposes of the rule. Taylor concedes that "[t]here is no question that the two matters involved the same defendant and same alleged victim." App. Brief at 18. Taylor appears to argue that the State needed to prove more. But the rule defines "matter" broadly to encompass a wide range of activity, including "any . . . investigation, charge, accusation, arrest, or other particular matter

5

involving a specific party or parties." Ark. R. Prof'l Conduct 1.11(e)(1). The "matter" can "continue in another form," and it is relevant whether the matter involved the same or related parties. Ark. R. Prof'l Conduct 1.11 cmt. 10. We hold that the circuit court did not abuse its discretion when it concluded the Lonoke County investigation and the Pulaski County prosecution were the same "matter" because the conduct involved the same defendant, the same victim, and the same general conduct.

Next, Taylor cites *Whitmer v. Sullivent*, 373 Ark. 327, 332, 284 S.W.3d 6, 10 (2008), for the proposition that the State needed to prove that the victim was Ivy's client before the court could disqualify him. But *Whitmer* involved Rule 1.7, which covers conflicts of interest that arise when an attorney tries to represent two clients with adverse interests. Rule 1.11, on the other hand, addresses prior government employment. Disqualification under Rule 1.11 does not depend on an attorney-client relationship.

Nor does the disqualification depend on Ivy having obtained confidential information. Another section of Rule 1.11 governs the use of confidential information by a former government attorney and provides a separate, independent basis for disqualification. Ark. R. Prof'l Conduct 1.11(c); *see also* Geoffrey Hazard, Jr., et al., *The Law of Lawyering*, § 16.12 (Supp. 2015). The section of the rule here instead limits representation when the former government attorney was involved in a "matter" both "personally" and "substantially."

On that point, Taylor argues that Ivy's meeting with the victim in the Lonoke County investigation was not substantial participation. We disagree. The term "personal and substantial participation" came from the Ethics in Government Act of 1978, 18 U.S.C. §

6

207, which defines it "as participation 'through decision, approval, disapproval, recommendation, the rendering of advice, *investigation* or other such action.'" Annotated Model Rules of Professional Conduct, Rule 1.11, annot. at 237 (10th ed. 2023) (emphasis added). An investigation has been defined as "[t]he activity of trying to find out the truth about something, such as a crime, accident, or historical issue." *Black's Law Dictionary* 953 (10th ed. 2014).

A prosecutor's investigation into a crime generally includes an interview with the victim. Particularly in sex-crime cases, the uncorroborated testimony of the victim alone can be enough evidence to convict. *See Ward v. State*, 370 Ark. 398, 400, 260 S.W.3d 292, 294 (2007). The circuit court did not abuse its discretion when it found that, by conducting an interview with the witness, Ivy substantially participated in the matter. And while the victim may not technically have been the prosecutor's "client," a confidential relationship of trust does play into the interaction. Interviewing the victim constitutes a substantial component of any prosecution. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 342 (1975) ("With a responsibility so strong and compelling that he probably became involved in the investigative or decisional processes, a lawyer upon leaving the government service should not represent another in regard to that matter."); *see also State v. Clausen*, 104 So. 3d 410, 411 (La. 2012) (per curiam) (finding firm-wide dismissal mandatory where attorney worked for the prosecutor's office, interviewed a robbery victim, and then resigned to work for the defense firm representing the alleged robber).

Finally, Taylor maintains that the entire Firm should not be disqualified and should be given a chance to come within the exception found in Rule 1.11(b). But the circuit

court found that the Firm failed to meet the requirements of this rule because Ivy had not been timely screened, and no written notice had been given to the State. Taylor does not dispute this finding on appeal. As set forth, Rule 1.11(b) contemplates proactive screening and notice. Here, the Firm waited until the State filed its motion for disqualification before invoking the exception. By then it was too late. Because we find the circuit court did not abuse its discretion, we affirm.

Affirmed.

BAKER, J., concurs.

*Digby Law Firm*, by: *Bobby R. Digby* and *Mathew R. Ingle*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.